[Cite as *Cooper v. Cooper*, 2013-Ohio-4433.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| LISA M. COOPER, | : | |
| | | CASE NO. CA2013-02-017 |
| Plaintiff-Appellee, | : | |
| | | O P I N I O N |
| | : | 10/7/2013 |
| - vs - | | |
| | : | |
| PATRICK SCOTT COOPER, | : | |
| Defendant-Appellant. | : | |


APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2011 DRB 01742


Christine D. Tailer, P.O. Box 14, Georgetown, Ohio 45121, for plaintiff-appellee

Cordell Law, LLP, Tifanie R. McMillan, 201 East Fifth Street, Suite 1410, Cincinnati, Ohio 45202, for defendant-appellant


**M. POWELL, J.**

{¶ 1} Defendant-appellant, Patrick Scott Cooper (Husband), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, granting a divorce between Husband and plaintiff-appellee, Lisa M. Cooper (Wife). For the reasons stated below, we affirm in part, reverse in part, and remand this cause to the lower court.

{¶ 2} Husband and Wife were married on August 22, 1982. Three children were born during the marriage and are now adults. The parties separated on October 20, 2011, and on December 19, 2011, Wife filed a complaint for divorce. In response, Husband filed an answer and counterclaim. The trial court held a hearing on these matters on October 16, 2012.

{¶ 3} During the hearing, Husband testified that the parties agreed to finance their adult children's college education. To support this assertion, Husband called as witnesses, the parties' adult son, Scott, and adult daughter, Heather. Both indicated that their parents agreed to help pay for their first four-year degree. Heather did not complete her degree and there was no evidence that Husband or Wife incurred any expenses on her behalf. Scott testified that once he was matriculated to the University of Miami in Florida, he believed his parents took out loans to pay for his college education. Husband testified that during the marriage, he initiated several student loans, in his name, in order to pay for Scott's college expenses. Husband also testified that he considered these loans to be a joint effort between him and Wife and requested the court to divide this debt equally. The balance of the loans totaled approximately $116,058. Wife provided no testimony on the subject.

{¶ 4} The trial court also heard testimony that a few months before the parties separated, Husband and Wife agreed to withdraw funds from his retirement account with Ford Motor Company, using a method suggested by BeneTrends, Inc. (BeneTrends), to fund a real estate investment business. Husband testified that the parties owned land along Lake Cumberland in Monticello, Kentucky and intended to build rental homes on this property. Husband explained that the purpose of the company was to finance their retirement by generating rental income from this property. In pursuance of this plan, CoCo Perle Properties, Inc. (CoCo Perle) was created in July 2011. As suggested by BeneTrends,

Husband funded CoCo Perle by withdrawing $40,101.21 from his retirement account and placing it into a business checking account in CoCo Perle's name.

{¶ 5} On January 24, 2013, the trial court issued a decision which made several findings regarding the parties' property and the division of this property. Pertinent to this appeal, the court found that the student loans Husband initiated on behalf of Scott were Husband's separate debt. As to CoCo Perle, the trial court found that the decision to employ the method suggested by BeneTrends was made "jointly or at least with Wife's consent," and therefore found that Husband's withdrawals from his retirement account in the amount of $40,101.21 was marital. The trial court also found that out of the $40,101.21 withdrawn, Husband used $19,323.85 to pay off the mortgage on the Monticello, Kentucky property, $3,995 went to BeneTrends for their services, and $877.95 remained in the account at the time of the hearing. Accordingly, the trial court found that Husband and Wife each received the benefit of one-half of the accounted for withdrawal amount ($12,098). As Husband was unable to account for the remaining $15,904.31 of the funds withdrawn, the trial court found Husband "received the benefit of $15,904.31 in marital assets plus one half of the accounted for withdrawal, for a total of $28,002.76." In order to equalize the property division, the trial court found "Husband must pay Wife $20,548.50."

{¶ 6} On March 7, 2013, the trial court entered a decree of divorce, granting the parties a divorce. The divorce decree also ordered Husband solely responsible for the student loan debt and ordered Husband to pay Wife $20,548.50. Husband appeals, raising the following three assignments of error:

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED IN FINDING THAT STUDENT LOANS TAKEN OUT DURING THE MARRIAGE IN THE NAME OF ONE PARENT FOR THE BENEFIT OF THE PARTIES' CHILD IS NOT A MARITAL DEBT.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE TRIAL COURT ERRED IN FINDING THAT [HUSBAND WAS] UNABLE TO ACCOUNT FOR $15,904.31 OF WITHDRAWN RETIREMENT FUNDS.

{¶ 11} Assignment of Error No. 3:

{¶ 12} THE TRIAL COURT ERRED IN FAILING TO DECIDE WHO IS RESPONSIBLE FOR DISSOLVING THE MARITAL BUSINESS.

### I. Standard of Review

{¶ 13} Property division in a divorce proceeding is a two-step process that is subject to two different standards of review. *Grow v. Grow*, 12th Dist. Butler Nos. CA2010-08-209, CA2010-08-218, CA2010-11-301, 2012-Ohio-1680, ¶ 11. Initially, pursuant to R.C. 3105.171(B), "the court shall * * * determine what constitutes marital property and what constitutes separate property." "Although the statute does not mention debt as an element of marital and separate property, the rules concerning marital assets have been consistently applied to marital and separate debt." *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 35. An appellate court reviews the trial court's classification of property or debt as marital or separate under the manifest weight of the evidence standard. *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 8; *Nichols-Ross v. Ross*, 12th Dist. Butler No. CA2008-03-090. 2009-Ohio-1723, ¶ 23.

{¶ 14} As the Ohio Supreme Court has recently clarified, the manifest weight standard is the same in both criminal and civil contexts. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. "Manifest weight 'concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 36, citing *Eastley* at ¶ 12. In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in

resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Eastley* at ¶ 20. In *Eastley*, the Supreme Court emphasized that in weighing the evidence, the appellate court must be guided by the presumption in favor of the finder of fact. *Ohmer* at ¶ 36; *Eastley* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21. However, the court of appeals is not required to accept the findings of fact of the trial court if "they are clearly erroneous." *Ohmer* at ¶ 36.

{¶ 15} After classifying the property as separate or marital, "the court shall disburse a spouse's separate property to that spouse" and divide the marital property equally. R.C. 3105.171(C)(1) and (D). However, if the court finds an equal division would be inequitable, then the court must divide the property in a manner it determines is equitable. R.C. 3105.171(C)(1); *Roberts v. Roberts*, 12th Dist. Clinton No. CA2012-07-015, 2013-Ohio-1733, ¶ 34. As mentioned above, the concepts related to "property" relate to both the parties' assets and debts. *See Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 35. The trial court is given broad discretion in fashioning a property or debt division and will not be reversed absent an abuse of discretion. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54. To find abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} With these principles in mind, we turn to Husband's arguments.

**II. Student Loan Debt**

{¶ 17} In his first assignment of error, Husband challenges the trial court's

classification of student loan debt incurred for Scott as his separate debt. Husband contends the student loan debt should have been classified as marital property as it was incurred during the marriage.[1] In addition, Husband asserts that the trial court's decision to hold him solely responsible for the entirety of the debt was an abuse of discretion as the decision was based, not on the evidence, but on the court's "dissatisfaction" with Husband's decision to call the parties' children to testify.

{¶ 18} Marital debt includes any debt that is incurred during the marriage for the joint benefit of the parties or for a valid marital purpose. *Nichols-Ross v. Ross*, 12th Dist. Butler No. CA2008-03-090, 2009-Ohio-1723, ¶ 26. Similar to assets, those debts accumulated during the marriage are presumed to be marital debts. *Id.* Accordingly, when a debt is incurred during the marriage, the burden is on the party seeking to have the debt classified as separate debt to demonstrate by a preponderance of the evidence, that such debt was the separate obligation of the other spouse. *Id.*; *Grow* at ¶ 18. In addition, the holding of title to property by one spouse individually or in the name of both spouses does not, by itself, determine whether a property is marital or separate. R.C. 3105.171(H); *Kohus v. Kohus*, 12th Dist. Clermont No. CA2002-07-055, 2003-Ohio-2551, ¶ 21.

{¶ 19} In the divorce decree, the court ordered Husband to pay and hold Wife harmless on all student loans. In the decision on divorce, the trial court explained that it did not find Husband's testimony regarding the student loans to be credible. The trial court stated:

---

1. Husband also contends within his first assignment of error that the trial court erred by insinuating that the credit report was insufficient evidence of the student loan debt. In response, Wife suggests that the presence of the student loans on Wife's credit report is insufficient to prove that the debt is marital. Neither argument is supported by the record. The credit report presented below is Husband's report, and there is nothing in the record to indicate that these loans also appeared on Wife's credit report or in any way affected Wife's credit. Instead, the record demonstrates that the trial court merely mentioned Husband presented evidence of the student loans by way of his credit report rather than statements from the lenders. As the trial court found the student loans were Husband's separate debt, it is clear that the court found sufficient evidence of the debt.

Although Husband is correct that student loans for adult children may be considered marital debt, there is no requirement that this court do so in this situation. Again, considering Husband's behavior since the separation, his testimony that he is solely liable on the student loan debts and that Wife consented to incurring the debts was not credible.[2]

{¶ 20} Based on the record before us, we find the trial court's decision that the student loan debt was husband's separate debt is against the manifest weight of the evidence and must be reversed. The trial court's decision was based on the fact that it did not find Husband's testimony that Wife consented to incurring this debt to be credible. The trial court was entitled to reject Husband's testimony. However, the record does not support the trial court's finding that the student loan debt was Husband's separate debt.

{¶ 21} Rather, the record indicates that the debt was marital. Scott testified that he attended the University of Miami between May 2006 and December 2010. Husband initiated educational loans each year starting in 2006 and ending in 2010. The parties' marriage did not terminate until October 2011. Accordingly, the student loan debt should have been presumed to be marital as it was incurred during the marriage. The burden was on Wife to show by a preponderance of the evidence that the debt was the separate obligation of Husband or that it was not incurred for the joint benefit of the parties or for a valid marital purpose. Wife simply did not meet this burden. In fact, Wife provided no testimony on the subject of student loans.[3] Husband, however, did present evidence that this debt was incurred for the joint benefit of the parties. Husband testified that paying for Scott's college education was a joint effort. In addition, the parties' children also testified that both Husband

---

2. Earlier in its decision, the trial court noted that since the parties' separation, Husband had engaged in several unilateral financial decisions without the consent or knowledge of Wife. This behavior included but was not limited to giving "Wife's jewelry to their adult daughter, filling out the title to the corvette in their adult son's name, giving their adult son $17,000, being unable to account for $15,904.31 from the [retirement fund] distribution."

3. Although the trial court stated Wife "denied" that the parties agreed to pay for son's education, there is nothing in the record to support this finding.

and Wife agreed to pay for their college education. Moreover, we note that the mere fact that the debt was in Husband's name alone is not enough to establish that the debt was Husband's separate debt.

{¶ 22} It was within the province of the trial court to reject Husband's testimony that Wife consented to incurring this debt even in light of Wife's failure to rebut it. "Even where the opposing party does not present evidence to rebut proffered evidence, the trier of fact is still not required to accept such evidence as credible." *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 9. However, there is simply nothing in the record to support the trial court's finding that the student loan debt was Husband's separate debt. The evidence submitted at the hearing demonstrated that the debt was accumulated during the marriage. Accordingly, the trial court was left with the presumption that the debt was indeed marital and should have divided this debt between the parties.

{¶ 23} We note that Wife points to Husband's behavior in making unilateral financial decisions since the termination of the marriage to support the trial court's finding that the student loan debt is separate. Certainly, Husband's behavior may have a bearing on the trial court's distribution of this marital debt as set forth in R.C. 3105.171; however, husband's behavior since the termination of the marriage, without more, does not support the trial court's decision. *See, e.g.,* R.C. 3105.171(E)(4) (If a spouse has engaged in financial misconduct, the trial court may compensate the offended spouse with a greater award of marital property).

{¶ 24} Given our finding that the trial court erred in classifying the student loan debt as separate debt, it is unnecessary to address Husband's contention that the trial court decision was based on its dissatisfaction with the parties' children being called to testify.

{¶ 25} Husband's first assignment of error is sustained.

### B. Unaccounted for Retirement Funds

{¶ 26} In his second assignment of error, Husband argues the trial court erred in finding he failed to account for $15,904.31 withdrawn from his retirement account. Husband asserts that the lump sum payment of $20,545.50 must be recalculated as the error resulted in the trial court ordering him to make a higher payment to Wife.[4] Husband maintains that he accounted for all of the funds withdrawn from his retirement account because he traced the funds from the retirement account into the checking account of CoCo Perle.

{¶ 27} In this assignment of error, Husband raises a very specific and limited issue, i.e., the propriety of the trial court's factual determination that Husband did not adequately account for $15,904.31 withdrawn for his retirement account and initially deposited into the CoCo Perle bank account. A court's factual determinations are accorded a degree of deference, and accordingly will not be disturbed on appeal if there is competent, credible evidence in the record to support those findings. *Dudley v. Dudley*, 196 Ohio App.3d 671, 2011-Ohio-5870, ¶ 9 (12th Dist.).

{¶ 28} Husband is correct; he did indeed trace the entire $40,101.21 from his retirement account into the CoCo Perle account. However, he was only able to account for the use of $24,196 once the funds were placed into CoCo Perle's account. The record indicates that the parties intended and agreed that the funds placed in CoCo Perle were to be used to pursue their interests in generating rental income to finance their retirement. Only approximately $24,196 of the $40,101.21 was used for this stated purpose. Husband testified that he used a portion of the funds to pay off the mortgage on the vacant lot in Monticello, Kentucky. Husband provided various figures for this pay-off, but after being presented with a cancelled check, he agreed it was $19,332.85. Husband also testified he

---

4. The trial court also found Husband received the benefit of $17,000 in other marital assets. The payment to Wife in the amount of $20,545.50, includes both the $17,000 and the $15,904.31 that trial court found Husband received in marital assets. Husband only contests the portion of the payment that reflects the unaccounted for $15,904.31.

used a portion of these funds to pay BeneTrends for the services in setting up CoCo Perle. There was conflicting testimony regarding the amount Husband paid BeneTrends. A receipt from BeneTrends in the amount of $3,995 was admitted into evidence and was the amount the trial court ultimately found that Husband paid. At the time of the hearing, $877.95 remained in the CoCo Perle checking account. Also, on cross-examination, Husband confirmed that he was unable to explain what happed to approximately $16,000 from the CoCo Perle account.

{¶ 29} Accordingly, based on this record, the trial court did not lose its way in finding that Husband was unable to account for $15,904.31 of the funds withdrawn from his retirement account as there was competent, credible evidence supporting this finding.

{¶ 30} Husband's second assignment of error is overruled.

### C. CoCo Perle

{¶ 31} In his final assignment of error, Husband argues the trial court erred in failing to allocate the responsibility for winding up the affairs and dissolving the corporation, CoCo Perle.

{¶ 32} Although the trial court's decree of divorce does not explicitly state that CoCo Perle was marital property, the parties do not dispute and the record demonstrates that the trial court considered CoCo Perle to be marital property. *See Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 59. R.C. 3105.171(B) requires the trial court to divide marital property.

{¶ 33} In the present case, the trial court only divided the assets that remained in the marital business, namely the checking account in the name of CoCo Perle. However, the trial court failed to allocate the responsibility to wind up the affairs of and dissolve this corporation. The record indicates that both Husband and Wife were involved in the formation of this entity and are both officers and directors of the corporation. Accordingly, both would

have the authority to wind up the affairs of the business. In addition, both Husband and Wife testified that they were uninterested in CoCo Perle existing after the divorce and essentially requested the court to dissolve the corporation. The divorce decree does not address this issue. It was incumbent upon the trial court to fully divide CoCo Perle. The trial court's failure to do so violates the requirements under R.C. 3105.171(B). Accordingly, we reverse and remand. On remand, we instruct the trial court to allocate the responsibility for the dissolution and winding up the affairs of CoCo Perle and divide any expenses associated with such actions.

{¶ 34} Husband's third and final assignment of error is sustained.

## II. Conclusion

{¶ 35} To the extent the trial court found the student loan debt was husband's separate debt and failed to fully divide the parties' business, CoCo Perle, the decree of divorce is reversed. In all other respects, the judgment of the trial court is affirmed. Upon remand, the trial court is instructed to adjust the division of marital property by allocating the student loan debt between the parties, as required by R.C. 3105.171. In addition, the trial court is instructed to allocate the responsibility for dissolving and winding up the corporate affairs in dividing CoCo Perle between the parties.

{¶ 36} Judgment affirmed in part, reversed in part, and remanded.

RINGLAND, P.J., and PIPER, J., concur.