[Cite as *Dellinger v. Dellinger*, 2016-Ohio-4995.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| ARTHUR E. DELLINGER, | : | |
| Plaintiff-Appellant, | : | CASE NO.   CA2015-12-229 |
| | : | O P I N I O N |
| - vs - | | 7/18/2016 |
| | : | |
| NADINE DELLINGER, | : | |
| Defendant-Appellee. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2014-10-1064


Daniel J. Picard, 110 Old Street, Monroe, Ohio 45050, for plaintiff-appellant

Caparella-Kraemer & Associates, LLC, Courtney N. Caparella-Kraemer, 4841A Rialto Road, Suite A, West Chester, Ohio 45069, for defendant-appellee


**PIPER, P.J.**

{¶ 1}  Plaintiff-appellant, Arthur Dellinger (Husband), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, dividing marital property after his divorce from Nadine Dellinger (Wife).

{¶ 2}  Husband and Wife were married in 1978, separated in 2005, and divorce proceedings began in 2014.  The couple had two children during the marriage, both of whom

were emancipated at the time of the divorce proceedings.

{¶ 3} Specific to the separation, the parties entered into an agreement in 2005 which addressed separation of marital property and disbursement of marital funds at some unknown point in the future when divorce would occur. As part of the agreement, Husband retained the marital residence. The parties did not cohabitate after 2005. However, the parties continued to jointly own the marital residence, and Husband continued to make the mortgage payments.

{¶ 4} The couple also had a home equity line of credit. In 2008, and after the separation, the couple refinanced significant debt via the equity line of credit. Wife agreed to pay the $113,500 balance, and has paid $106,000 toward the debt.

{¶ 5} Also during the time of the separation, the parties continued to file their taxes jointly. Husband also gave Wife funds to pay for their children's school loans. Husband and Wife maintained a joint insurance policy for their automobiles, and Wife remained on Husband's medical insurance through work.

{¶ 6} Husband filed for divorce in October 2014. The trial court used December 31, 2014 as the termination date of the marriage, and divided the marital property equally as of that date. Husband now appeals the trial court's order, raising the following assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT ERRED BY FAILING TO EITHER UNDERSTAND AND OR INTERPRET THE TESTIMONY PROVIDE [SIC] AT TRIAL.

{¶ 9} In Husband's first assignment of error, he argues that the trial court erred in its recitation of facts because the facts used by the trial court were unsupported by the record.

{¶ 10} In support of his argument that the trial court erred by misstating facts, Husband points to portions of the trial court's factual findings that he believes to be

inaccurate. First, the trial court referenced the marital property being purchased before the marriage, when Husband argues that it was purchased afterwards. Second, the trial court indicated that Wife chose to pay down the line of credit with her earnings after the date of separation, while Husband asserts that Wife paid the line of credit because she incurred the debt. Third, the trial court stated that Wife used some of her inheritance to pay down the line of credit, while Husband asserts that Wife spent her inheritance on purchasing a Tennessee property and a boat. Fourth, the trial court stated that Wife claimed a long history of domestic violence and that she finally left the relationship in 2005 after Husband "turn[ed]" on their daughter. Husband argues that the record indicates only that he slapped the couple's 17-year-old daughter on the back of the head and was consequently charged with domestic violence for the incident, which was later reduced to disorderly conduct.

{¶ 11} Husband argues that these factual discrepancies are of "serious concern as they were the basis of the court's decisions in this case." However, Husband fails to indicate in any way how the misstatements or interpretation of facts by the trial court affected the outcome of the case. According to Civ.R. 61,

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶ 12} After reviewing the record, we find that the trial court's findings of fact were not inconsistent with substantial justice, nor did any misstatements by the trial court in its recitation of the facts affect the substantial rights of either party. Regarding the marital home, the trial court heard testimony that was ambiguous as to when the marital property was bought and built. Husband testified that he sold real estate prior to the marriage and then

- 3 -

tried to place the transactions in context by stating "whenever I was building the property I've got now." Even if this ambiguous testimony was sufficient to demonstrate that the property was purchased after marriage, there is no indication as to how this would impact the trial court's decision. The couple agreed that Husband would maintain the marital property, and wife never challenged that aspect of the property division. There was no controversy over whether the marital home was marital property, and Husband never argued that the property should be considered nonmarital. As such, the purchase date is not significant.

{¶ 13} In regard to Wife paying down the line of credit, the record does indicate that Wife's debt comprised the line of credit balance. However, Wife was under no obligation, such as a court order, to solely make the payments. Instead, she voluntarily made the payments to pay down the line of credit after she and Husband both agreed to refinance the debt through the equity line of credit. Husband did not contest the fact that Wife paid $106,000 toward the $113,500 debt. Regardless, whether Wife *chose* to pay the debt or did so based on an agreement with Husband, the record indicates that such debt was paid and Husband was not held liable for the amount Wife paid. Moreover, and while there was no testimony as to whether Wife used part of her inheritance to pay down the debt, such is insignificant because Wife was not awarded any compensation for using inherited monies to pay off a marital debt. As such, and regardless of where the funds came from to pay down the line of credit, the division of property did not change.

{¶ 14} Regarding the domestic violence incident, the record demonstrates that Wife testified to the abuse she suffered from Husband, including physical, emotional, and verbal. Wife's testimony regarding the incident between her daughter and Husband was relevant as to why she left the home and separated from Husband in 2005. However, there is not any indication in the record that the trial court's statement about Husband "turning" on their daughter by hitting her in the head did not happen. Husband does not deny that he hit his

daughter or that he was eventually charged with disorderly conduct for the incident.  Instead, he only disagrees with the trial court's characterization of the incident as his "turning" on his daughter.  However, and given that both children of the marriage were emancipated and had no involvement in the trial court's decision or division of property, there is no indication that such fact finding had any impact on the outcome of the case.  The two main contested issues were the termination date of the marriage, and property division.  Whether Husband "turned" on his daughter or whether he was only charged with disorderly conduct has no impact on the two main contested issues of the divorce proceedings.

{¶ 15}  After reviewing the record, we find that any misstatements by the trial court or the manner in which the trial court stated the facts had no impact on the outcome of the case, and Husband has demonstrated no prejudice.  As such, any inaccuracies in the trial court's findings of fact would amount to harmless error as set forth in Civ.R. 61.  Husband's first assignment of error is therefore overruled.

{¶ 16}  Assignment of Error No. 2:

{¶ 17}  THE TRIAL COURT ERRED BY DECIDING THAT THE VALUATION DATE SHOULD BE DECEMBER 31, 2004 [SIC] INSTEAD OF OCTOBER 19, 2005.

{¶ 18}  Husband argues in his second assignment of error that the trial court erred in deciding the termination date of the marriage because the termination date should have been retroactive to the date of separation in 2005.

{¶ 19}  The record indicates that the parties litigated the termination date of the marriage to a magistrate before the final divorce decree was issued.  The magistrate found that January 8, 2015 was the proper termination date.  Husband then filed an objection to that decision, which the trial court overruled.  However, the trial court modified the valuation date to December 31, 2014 according to Butler County Domestic Relations Court Local Rule 28(B)(2)(b), which presumes the termination date will coincide with the last day of the

calendar quarter following the filing of the complaint.

{¶ 20} Generally, the proper date for the termination of a marriage, for purposes of property division, is the date of the final divorce hearing. *Fillis v. Fillis*, 12th Dist. Clermont No. CA2008-10-093, 2009-Ohio-2808, ¶ 8. However, "in order to do equity, a trial court must be permitted to utilize alternative valuation dates * * * where reasonable under the facts and circumstances presented in a particular case. In this fashion, the trial court will have the necessary flexibility to exercise its discretion in making truly equitable awards consistent with legitimate expectations of the parties." *Berish v. Berish*, 69 Ohio St.2d 318, 321 (1982); R.C. 3105.171(A)(2)(b).

{¶ 21} Given that the trial court has broad discretion to select dates it considers equitable, and because the determination of the termination date of a marriage is largely a question of fact, this court will not disturb the trial court's finding absent an abuse of discretion. *Roberts v. Roberts*, 12th Dist. Clinton No. CA2012-07-015, 2013-Ohio-1733, ¶ 28. An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 22} The record is undisputed that the parties lived separately since their October 2005 separation. However, the record is equally clear that the parties continued to entangle their lives after the separation date in 2005. The record indicates that the couple took trips together after their separation, and that the couple made an attempt to "turn things around." The parties continued to have a joint automobile insurance policy as a married couple, and continued to file annual tax returns as "married filing jointly." They also secured the equity line of credit jointly in the years following their separation. Further, the parties indicated their intention to inherit from one another in the event of one spouse's death. Wife continued to be covered on Husband's medical insurance, and the parties also jointly paid for their children's education.

{¶ 23} Husband argues that the parties' execution of the 2005 separation agreement should establish the termination date because it was a contract to divide the assets of the parties. However, the agreement made continual reference to a divorce occurring in the future at an unknown and undetermined date. Within the agreement, the parties agreed to inherit from each other should either die before the date of divorce, and also agreed that their retirement accounts would be treated separately only after divorce. There is no termination date listed in the agreement, and the facts stated above clearly indicate that despite the agreement, the parties continued to intertwine their lives.[1]

{¶ 24} Additionally, and while Husband claims that the separation agreement was a final termination of the marriage, his testimony at the hearing clearly indicates otherwise. For example, on cross-examination, Husband was asked whether he ran Wife's credit report without her permission in 2007, two years after the separation date. After Husband confirmed that he ran Wife's credit report without her permission, Wife's counsel asked Husband why he did not ask Wife for permission, and Husband responded. "I was married to [Wife.] * * * I thought I had the right to get that information. I mean, that affects my life too." When asked whether Husband considered himself married as of 2007, Husband responded, "we were married officially the whole time, yes."

{¶ 25} After reviewing the record, the circumstances of this particular case dictate that 2005 was not the termination date of the marriage as Husband asserts. The couple continued to make financial decisions together, and entangled their lives on multiple levels. As such, we find no abuse of discretion in the trial court's decision to set the termination date as of 2014 rather than 2005. Husband's second assignment of error is therefore overruled.

---

1. We would also note that the terms of the agreement, such as Husband paying Wife lump sum payments, did not occur and the legal formation of the agreement is questionable. Still, our decision should in no way stand for the proposition that the written agreement is or is not controlling in this case, as that matter is not before us. Husband did not assign as error the trial court's use or nonuse of the agreement, and we will not reach the merits of a matter not properly assigned as error.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE TRIAL COURT ERRED BY NOT FINDING AN UNEQUAL DIVISION OF MARITAL ASSETS.

{¶ 28} Husband argues in his third assignment of error that the trial court erred by not ordering an unequal division of property.

### Equal Division of Property

{¶ 29} Property division in a divorce action is a two-step process. *Boyer v. Boyer*, 12th Dist. Butler Nos. CA2010-04-083 and CA2010-05-109, 2011-Ohio-989, ¶ 6. First, the court must classify the property by determining what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). After classifying the property, the trial court must disburse a spouse's separate property to that spouse, and divide the marital property equally between the spouses, unless the court finds that an equal division would be inequitable. R.C. 3105.171(C) and (D).

{¶ 30} R.C. 3105.171(F) identifies the factors the court must consider in dividing the marital property. If, after a consideration of the relevant factors, the court finds an equal division of marital property would be inequitable, the court must divide the property in a manner the court determines to be equitable. R.C. 3105.171(C)(1).

{¶ 31} As previously stated, the trial court ordered an equal separation of property, and did not find that an equitable separation was necessary. Husband argues that the trial court's decision was an abuse of discretion given that the parties were separated for more than nine years during which time he continued to accumulate assets. Specifically, Husband argues that his retirement accounts grew substantially in the years between the separation and the divorce and that Wife should not share in the increase since the date of separation.

{¶ 32} Despite Husband's arguments, the trial court considered that during the separation, the parties continued to make financial decisions together, and that Wife

contributed heavily to the support of the couple's children. Wife used credit cards that were eventually refinanced in the couple's home equity line of credit to pay for everyday expenses for herself and her daughter because she did not otherwise receive spousal or child support during the years of separation. Even so, Wife personally paid down the equity line of credit the parties used to refinance the debt. During this time, Husband was able to contribute a significant amount to his retirement, but that fact does not establish that an unequal division of property was warranted.

**Social Security**

{¶ 33} Husband also argues that the trial court failed to take into account the social security benefits Wife was entitled to receive when dividing the property. The trial court specifically noted social security as it related to the parties, but did not offset Wife's social security payment she may receive in the future.

{¶ 34} "Social Security benefits themselves are not subject to division in a divorce proceeding." *Neville v. Neville*, 99 Ohio St.3d 275, 277, 2003-Ohio-3624, ¶ 8. However, a court may consider Social Security benefits when dividing a public retirement account, which is subject to division as marital property. R.C. 3105.171(F)(9).

{¶ 35} According to R.C. 3105.171(F)(9), when making a division of marital property, the trial court shall consider "any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension." While the trial court must consider any retirement benefits, trial courts have the discretion to determine whether Social Security benefits are relevant for purposes of dividing a public pension. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 38. As such, the court may determine that those benefits are "not relevant for purposes of dividing a public pension and not consider them." *Id.*

{¶ 36} The record indicates that Husband is a public employee who contributes to the

Ohio Public Employees Public Retirement System. However, Husband also paid into Social Security before he became a public employee. As such, Husband is entitled to receive a reduced amount of Social Security upon retirement, along with his public employee retirement payment. Wife also paid into Social Security, and will become eligible to collect upon retirement.

{¶ 37} Pursuant to the statute, the trial court considered all of the parties' retirement benefits. In so doing, the court made specific reference to Husband's Social Security eligibility, as well as Wife's. The trial court was not under an obligation to find such benefits relevant to the determination of the division of Husband's retirement account. As such, because the trial court considered the information according to the statute, we find no abuse of discretion in not further including the Social Security benefits of the parties' in the division of marital property.

**Separate Property**

{¶ 38} As defined by R.C. 3105.171(A)(3)(a), marital property includes "all real and personal property that is currently owned by either or both of the spouses * * * that was acquired by either or both of the spouses during the marriage." Marital property, however, "does not include any separate property." R.C. 3105.171(A)(3)(b). Separate property is defined by R.C. 3105.171(A)(6)(a), and as pertinent to the case at bar includes, "(i) An inheritance by one spouse by bequest, devise, or descent during the course of the marriage; (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

{¶ 39} "A trial court's classification of property as marital or separate must be supported by the manifest weight of the evidence." *Grow v. Grow*, 12th Dist. Butler Nos.

- 10 -

CA2010-08-209, CA2010-08-218, and CA2010-11-301, 2012-Ohio-1680, ¶ 11. The manifest weight of the evidence "concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." *Cooper v. Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 14. A reviewing court should be guided by the presumption in favor of the finder of fact, as the "trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Zollar v. Zollar*, 12th Dist. Butler No. CA2008-03-065, 2009-Ohio-1008, ¶ 10.

{¶ 40} Husband argues that the trial court did not award him value equal to the amount he brought into the marriage, $50,000, for the sale of his premarital residence. However, Husband failed to demonstrate that he used $50,000 of his separate property to buy the marital home. As previously stated, the trial court heard ambiguous testimony regarding when the property was sold and at what time the marital home was actually purchased. Husband never produced any evidence to support his contention that the money was used toward the marital home. In fact, during his cross-examination, Wife's counsel asked Husband whether he had any way to establish that any proceeds from his separate property went into the marital residence. Husband stated, "nothing I can present today."

{¶ 41} Moreover, and despite Husband testifying that the $50,000 was invested into to the marital home, Wife testified that Husband did not use $50,000 of premarital funds to purchase the marital home. The trial court is in the best position to determine the credibility

of the witnesses, and we will not disturb such findings on review.

{¶ 42} Husband argues that Wife's $70,000 inheritance was comingled with the marital property to such a degree that its proceeds were not traceable and could not be considered separate property. The record indicates that Wife received a $70,000 inheritance, and that the couple purchased property in Tennessee for $46,000 and a boat for $21,000 using the funds. The Tennessee property was later sold for a profit of $5,300 and the boat was later sold as well. The original amount of the inheritance, and where the funds went during the marriage were traceable through the testimony and the record, and as such, the trial court's decision was properly made.

{¶ 43} Husband lastly argues that the trial court erred in determining that his life insurance policies were also separate property because they were purchased prior to the date of marriage. However, the trial court found that Husband failed to demonstrate the amount of the policies that was separate property. The record indicates that Husband did not produce any evidence or testimony in regard to the value of the policies as the date of the marriage versus what the policies were worth at the time of divorce.

{¶ 44} In fact, during his testimony, Husband was asked whether he knew how much he paid on the policies after marriage, and Husband answered, "No." Husband did admit that at the time of the marriage, the policies were not paid in full, and when asked on cross-examination if he had any way to document the worth of the policies prior to the marriage, Husband responded, "uh, no." As such, the record indicates that some cost of the policy was satisfied with marital funds, and that Husband submitted no evidence as to the premarital value of the policies. Therefore, Husband failed to demonstrate that the value of the insurance policies at the time of divorce was separate property.

{¶ 45} After reviewing the record, we find that the trial court's division of property was proper. As such, Husband's third assignment of error is overruled.

{¶ 46}  Judgment affirmed.

S. POWELL and RIINGLAND, JJ., concur.