[Cite as *Smith v. Smith*, 2022-Ohio-1897.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


PAULETTE SMITH,                          :

    Appellant,                          :                    CASE NO. CA2021-11-061

                                   :                    <u>O P I N I O N</u>
- vs -                                                                          6/6/2022

                                   :

LINK M. SMITH,                           :

    Appellee.                           :



APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2014 DRA 01222


Paulette Smith, pro se.

Kenneth E. Peller, for appellee.



**PIPER, J.**

{¶ 1} Paulette Smith appeals from the decision of the Clermont County Common

Pleas Court, Domestic Relations Division, transferring jurisdiction to Tazewell County,

Virginia.  For the reasons detailed below, we affirm.[1]

---

1. Paulette failed to file the transcript in its entirety.  We may presume the regularity of proceedings when portions of the record potentially relevant are not supplied for review.  *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199-200 (1980).  Significantly, in her appellate brief, Paulette does not dispute the facts as stated in the magistrate's decision.

{¶ 2}  Link Smith and Paulette are the adoptive parents of their grandson, T.S., born in June 2007.  Link and Paulette were divorced in Clermont County, Ohio in May of 2016.  Paulette was designated as the sole residential parent and legal custodian of T.S.  Link was granted parenting time with T.S. in Virginia where he resides.  However, Paulette indicates that years passed where Link did not see T.S.

{¶ 3}  The record reflects that Link failed to make certain property equalization payments and therefore was found in contempt.  On May 16, 2019, the domestic relations court found that Link failed to comply with the terms of the purge order, sentenced him to 60 days in jail, and issued a bench warrant for his arrest.

{¶ 4}  In May 2020, T.S., who was now a teenager, expressed an interest in reuniting with Link.  Paulette agreed and T.S. went to visit Link in Virginia for a weekend.  The visit was later extended to June 24, 2020.  However, when that day came, T.S. refused to return home with Paulette.  T.S. reportedly became physically violent with Paulette when she tried to take him back to Ohio.  Eventually, Paulette decided to allow T.S. to stay in Virginia but insisted that he come back home for a doctor's appointment in July 2020.  Accordingly, on July 7, 2020, T.S. returned to Ohio with Paulette.  Ten days later T.S. returned to Virginia for the remainder of the summer.

{¶ 5}  On August 10, 2020, T.S. returned to Ohio, to begin school within the Bethel-Tate School District.  However, in October 2020, T.S. again became physically violent with Paulette.  Therefore, Paulette called Link to ask for his help.  Evidently T.S. went to live with Link at that time because the parties agree that since October 2020, T.S. has lived with Link in Virginia.

{¶ 6}  On April 12, 2021, Paulette filed a postdecree motion in the Clermont County Domestic Relations Court to modify parenting rights and responsibilities.  In her motion, Paulette acknowledged that T.S. had been living with Link under what she called a "long

term temporary visitation plan." Paulette stated that she wanted to remain the residential and sole legal custodian of T.S. but requested that both she and Link have shared parenting rights of T.S. Under these terms Paulette proposed that T.S. reside in Virginia during the school year and return to Ohio during the summer months excluding holidays.

{¶ 7} On May 19, 2021, Link moved to dismiss Paulette's postdecree motion filed in Ohio and requested the domestic relations court transfer the case to Tazewell County, Virginia. In support of his motion, Link provided an affidavit stating that T.S. had been living with him since October 2020. Link averred that the individuals most familiar with T.S.'s personal and educational needs were in Virginia. He further averred that T.S. was disinclined to return to Ohio and that the evidence concerning T.S.'s needs was in Virginia. As a result, Link requested the court dismiss Paulette's motion and transfer the proceedings to Tazewell County, Virginia.

{¶ 8} On May 27, 2021, the magistrate entered its pretrial order stating that it would hold a hearing to determine whether Tazewell County, Virginia was a more appropriate forum pursuant to R.C. 3127.21. The order included accommodations for parties wishing to appear via Zoom.

{¶ 9} On June 25, 2021, Link requested that he be permitted to appear and testify virtually via Zoom. Paulette objected to Link's request arguing that he was subject to a bench warrant for contempt of court and failure to report to jail. The magistrate overruled Paulette's motion, stating that its prior order made clear that both parties could elect to appear via Zoom and indicated that the "outstanding bench warrant * * * will be addressed at the hearing."

{¶ 10} The parties appeared for a hearing on July 26, 2021, during which Paulette appeared in person while Link appeared via Zoom. Only a partial transcript of that proceeding was filed.

{¶ 11} On August 12, 2021, the magistrate recommended that the Clermont County domestic relations court relinquish jurisdiction to Tazewell County, Virginia as Clermont County was an inconvenient forum pursuant to R.C. 3127.21. The court stayed further proceedings pending Tazewell County's assumption of jurisdiction. Paulette filed timely objections. The domestic relations court overruled Paulette's objections and adopted the magistrate's decision. Paulette now appeals, raising two assignments of error for review.

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED BY DENYING THE KNOWLEDGE OF KNOWING THE BENCH WARRANT EXISTED.

{¶ 14} In her first assignment of error, Paulette asserts the magistrate erred when it claimed it had no knowledge of Link's bench warrant. Paulette fails to present any recognizable legal argument, but instead presents arguments concerning her dissatisfaction with the facts as she understands them. Namely, that the magistrate previously acknowledged that Link had a bench warrant for his arrest but nevertheless allowed him to appear at the hearing via Zoom.[2] However, during the hearing, the magistrate claimed it had no knowledge of the bench warrant, stating:

> THE COURT: All right, so, Mr. Link, I have allowed you to appear by Zoom today because it was my suggestion. I wasn't aware of the, of the bench warrant at the time that I suggested it because you live in Virginia and we're allowing people to * * * everyone to appear by Zoom if they want to at this point. But we do have an issue of the fact that you have a bench warrant out because you were supposed to report to serve a jail sentence for your contempt finding. And that bench warrant is not going away * * *.

{¶ 15} Based upon this apparent misstatement or contradiction, Paulette contends that the magistrate abused its discretion by denying knowledge of the bench warrant.

---

2. Again, the magistrate previously indicated that the outstanding bench warrant would be addressed at the hearing.

- 4 -

However, in so doing, Paulette does not address how this apparent misstatement or contradiction resulted in any prejudice or affected any substantial right pertaining to a domestic relations court's consideration of transferring jurisdiction. According to Civ.R. 61,

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶ 16} After reviewing the record, we find that any misstatement or contradiction by the magistrate concerning its knowledge of the bench warrant had no impact in the proceedings on the motion before the court. *Dellinger v. Dellinger*, 12th Dist. Butler No. CA2015-12-229, 2016-Ohio-4995, ¶ 15. The magistrate may have previously been aware of the bench warrant and then simply forgot about it.

{¶ 17} The existence of a bench warrant is not one of the factors listed in R.C. 3127.21. Nor is the existence of a bench warrant a particularly relevant consideration for a court in deciding the proper forum for a hearing. The issue before the court was whether Ohio had become an inconvenient forum and whether future proceedings would be more appropriately held in Virginia. Accordingly, while the magistrate perhaps could have been more aware of past proceedings and the file which indicated a bench warrant had been issued, Paulette cannot demonstrate any prejudice regarding the relinquishment of jurisdiction. With there being no prejudice, there is no reversible error. *Back v. Faith Properties, L.L.C.*, 12th Dist. Butler No. CA2001-12-285, 2002-Ohio-6107, ¶ 16 (for a trial court's error to be reversible error, appellant must show prejudice). Paulette's first assignment of error is overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED BY ALLOWING RELINQUISH [sic] OF JURISDICTION

{¶ 20} In her second assignment of error, Paulette alleges the domestic relations court erred by relinquishing jurisdiction.

{¶ 21} This court reviews a domestic relations court's decision on a motion to declare an inconvenient forum for an abuse of discretion. *Kraemer v. Kraemer*, 12th Dist. Butler No. CA2017-08-120, 2018-Ohio-3847, ¶ 13. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Ohio adopted and codified the Uniform Child Custody Jurisdiction and Enforcement Act in R.C. 3127.01 through 3127.53. The purpose of the act is to avoid jurisdictional issues and competition between different states with respect to child custody issues. *Powers-Urteaga v. Urteaga*, 12th Dist. Warren No. CA2014-08-109, 2015-Ohio-2465, ¶ 13.

{¶ 22} R.C. 3127.21 provides a domestic relations court with discretion to transfer jurisdiction of a custody matter to a different state upon a finding that, (1) the Ohio court "is an inconvenient forum under the circumstances[,]" and (2) that "a court of another state is a more convenient forum." R.C. 3127.21(A). The statute provides that the court shall first "consider whether it is appropriate for a court of another state to exercise jurisdiction" and then proceed to determine whether the Ohio court is an inconvenient forum. R.C. 3127.21(B). The statute identifies eight nonexclusive factors for a court to consider when deciding whether to relinquish jurisdiction:

> (1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) The length of time the child has resided outside this state;
>
> (3) The distance between the court in this state and the court in

the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

R.C. 3127.21(B).

{¶ 23} In this case, the magistrate discussed each factor with reference to the specific facts. The magistrate found that T.S. has lived in Tazewell County, Virginia since October 2020, and that Tazewell County is only about 300 miles away. The magistrate noted that Paulette had familiarity with Tazewell County as she had invested in real estate there. Significantly, the magistrate found the parties signed an agreement in October 2020 that T.S. was to reside primarily in Virginia and attend school there.

{¶ 24} The magistrate recognized that while there may be some evidence in Ohio, the most significant evidence that related to T.S. would be in Virginia. T.S. goes to school in Virginia and has a therapist there. The magistrate noted that the court in Tazewell County was willing and able to accept jurisdiction. Finally, the magistrate noted that the judicial system in Tazewell County had some familiarity with the parties.

{¶ 25} Based upon these facts, the magistrate found that Ohio was an inconvenient forum and Virginia was a more convenient forum. The magistrate concluded jurisdiction was to be relinquished to Tazewell County, Virginia. Upon overruling Paulette's objections and adopting the magistrate's findings and conclusion, the domestic relations court stated:

[Paulette] objects to the magistrate's decision alleging that the bench warrant should have been addressed before the Court relinquished jurisdiction. [Paulette] presents no legal authority for this contention. Here, the Court simultaneously ruled that the bench warrant would remain under Ohio jurisdiction while also transferring jurisdiction to the Tazewell County Juvenile Court. Therefore, [Paulette's] first objection is overruled.

{¶ 26} On appeal, Paulette does not challenge the domestic relation's court resolution of the R.C. 3127.21(B) factors in finding Ohio an inconvenient forum, but only argues that the domestic relations court should not have transferred the case while Link had an outstanding bench warrant. Yet, we are compelled to agree with the domestic relations court that Paulette's argument is unsupported by legal authority. In this case, the domestic relations course presented ample justification to relinquish jurisdiction which does not amount to an abuse of discretion. The record reveals that Ohio became an inconvenient forum and Virginia was now the more convenient and appropriate forum.

{¶ 27} Due to the foregoing reasons expressed herein, we find Paulette's second assignment of error also without merit and it is hereby overruled. We therefore affirm the domestic relations court's decision.

{¶ 28} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.