[Cite as *Ohmer v. Renn-Ohmer*, 2013-Ohio-330.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| RICHARD J. OHMER, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2012-02-020 |
| | : | O P I N I O N |
| - vs - | | 2/4/2013 |
| | : | |
| HOLLIE A. RENN-OHMER, | : | |
| Defendant-Appellee. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2010-12-1500


M. Lynn Lampe, Adam C. Gelding, 1248 Nilles Road, Suite 7, Fairfield, Ohio 45014, for plaintiff-appellant

Richard B. Uhle, Jr., 285 Main Street, Batavia, Ohio 45103, for defendant-appellee


**RINGLAND, J.**

{¶ 1} Plaintiff-appellant, Richard Ohmer ("Father"), appeals from a decision in the Butler County Court of Common Pleas, Domestic Relations Division, granting a divorce between Father and defendant-appellee, Hollie Renn-Ohmer ("Mother"). This decision also granted Mother sole custody of the parties' two minor children, awarded child and spousal support in favor of Mother, and divided the parties' property. For the reasons outlined below,

we reverse the decision of the trial court and remand the matter for further proceedings.

{¶ 2}  The parties were married on June 11, 2005, and have two children born issue of their marriage, Alexa, whose date of birth is July 13, 2006, and Rylan, whose date of birth is May 4, 2008.  Father is a staff physician at an urgent care facility and additionally works at a managed care organization where he reviews medical worker compensation cases.  Mother has a gerontology degree and previously worked as a firefighter and paramedic.  Mother worked until some point during her pregnancy with the parties' first child.  Sometime in 2010, the parties were in the process of negotiating to file dissolution paperwork.  However, negotiations broke down after Father noticed Mother had been taking trips without him and wearing new clothes and jewelry.  Additionally, Father restrained Mother and forced her to kiss him, further hindering the relationship.

{¶ 3}  On December 22, 2010, Father filed for divorce.  At this time, it appears Mother was in Virginia visiting her paramour, Joseph Hill, whom she met online sometime in October.  The parties' two children were with her at some point during the Virginia trip.  After Mother returned to Ohio, she was served with the divorce complaint on December 27, 2010.  The next day, she left the marital residence with the children.  On December 29, 2010, Mother notified Father via email that she had moved out with the children.  Mother offered to bring the children to the marital residence on January 3, 2011, to spend the day with Father.

{¶ 4}  On January 3, 2011, Father filed motions for contempt, an emergency hearing, and ex parte orders.  Father alleged that Mother left the marital residence with the parties' two minor children and a few household items.  Father also alleged that he did not know where Mother had taken the children or where they were living. Father averred in his affidavit that Mother sent him an email on December 29, 2010, stating that she had moved out with the children.  However, he did not reveal to the trial court that Mother offered to return the children on January 3, 2011.  The trial court granted Father's motion, and designated Father

legal custodian and residential parent of the parties' two minor children. The order also stated Mother's parenting time was to be supervised until further order of the court.

{¶ 5} Following the ex-parte order limiting Mother's parenting time to supervised visits, Mother did not see her children until January 27, 2011. On January 12, 2011, Mother emailed Father and asked if her friend could pick up the children so she could visit with them. Father was apparently uncomfortable with the situation, and did not allow Mother's friend to pick up the children. Mother admittedly left for Virginia soon after she made the request. The trial court found: "Dr. Ohmer then refused Ms. Renn-Ohmer any parenting time with the children until 1/27/11, in spite of the fact that Dr. Ohmer was working 14 hour days and was unavailable to exercise parenting time."

{¶ 6} After Mother returned from Virginia, the parties reached an agreement regarding temporary orders. The parties agreed on a parenting schedule, child support, and spousal support. With some modifications, the parenting schedule generally reflected Mother as the residential parent and Father as the nonresidential parent.

{¶ 7} A final divorce hearing was held in front of a judge on September 1 and 13, 2011. Father filed a proposed shared parenting plan, which Mother opposed. The trial court found that Father's shared parenting plan was not in the children's best interest and designated Mother the residential parent and legal custodian of the children. The trial court stated: "The Court has reviewed the factors, but relies most heavily on the fact that Ms. Renn-Ohmer has been the primary caregiver, that the parties are unable to work together in the best interest of the children, Dr. Ohmer's denial of parenting time from January 3 to January 27, 2011 and his continued justification for his behavior at trial."

{¶ 8} The trial court also awarded Mother spousal support, ordered Father to pay child support, and divided the parties' property. A final divorce decree was filed on January 13, 2012. It is from this decree that Father timely appeals, asserting five assignments of

error for review.

{¶ 9}   Because Father's first, second, and third assignments of error are related, we will address them together.

{¶ 10}  Assignment of Error No. 1:

{¶ 11}  THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY DENYING APPELLANT'S MOTIONS TO ADMIT NEW EVIDENCE AFTER THE FINAL HEARING BUT PRIOR TO THE TRIAL COURT'S DECISION, AS THE EVIDENCE WAS RELEVANT TO THE CUSTODY DETERMINATION.

{¶ 12}  Assignment of Error No. 2:

{¶ 13}  THE TRIAL COURT ABUSED ITS DISCRETION IN DESIGNATING APPELLEE AS THE SOLE RESIDENTIAL PARENT AND LEGAL CUSTODIAN, AS THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14}  Assignment of Error No. 3:

{¶ 15}  THE TRIAL COURT ABUSED ITS DISCRETION IN DESIGNATING APPELLEE AS THE SOLE RESIDENTIAL PARENT AND LEGAL CUSTODIAN, AS THE TRIAL COURT MOST HEAVILY RELIED UPON APPELLANT'S "DENIAL OF PARENTING TIME," HOWEVER, THE EVIDENCE DID NOT SUPPORT THIS FINDING.

{¶ 16}  Father argues in his first assignment of error that the trial court abused its discretion by not considering newly-discovered evidence which impacts the best interest of the children.  Specifically, Father argues that evidence he sought to introduce would show that Mother failed to inform him of Alexa's significant behavioral issues at school which required counseling.  In addition, Father asserts that Mother failed to inform him of an injury Rylan had sustained until after Rylan had been released from the emergency room.  Father argues in his second and third assignments of error that the trial court abused its discretion in

- 4 -

designating Mother the sole residential parent and legal custodian of the children. Specifically, Father argues that the trial court's decision was against the manifest weight of the evidence because Mother violated virtually every temporary court order during the pendency of the divorce. Father asserts that Mother violated temporary orders by: taking the children to Virginia without telling Father, moving the children into a new residence during the pendency of the divorce without telling Father, enrolling the children into different schools without telling Father when she did not have custody of the children, not informing the schools of Father's contact information, and leaving the children with a third party when she went to Virginia to visit her paramour. Furthermore, Father argues that the evidence did not support the finding that Father denied Mother parenting time. Father asserts that Mother only contacted Father one time regarding visitation in January. Father alleges that supervised visitation did not occur because Father did not approve of the supervisor, and immediately after Father's disapproval of the supervisor, Mother left Ohio to visit her paramour in Virginia for the remainder of the month.

{¶ 17} First, we will address the issue related to new evidence. "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produced a material prejudice to the aggrieved party. *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984). An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 18} In *In re Sullivan*, 12th Dist. No. CA2002-03-061, 2003-Ohio-195, we found that the trial court did not abuse its discretion by considering new evidence in a permanent custody proceeding when the Children Services Board filed a "Motion to Reopen Permanent Custody Proceedings" based on the discovery of new evidence. In *Sullivan*, the motion was

supported by an affidavit signed by a Children Services Board caseworker. *Id.* at ¶ 5. The new evidence included information that the father in the case had previously concealed information from the court, specifically regarding another child. *Id.* Furthermore, in *Anderton v. Hatfield*, 10th Dist. No. 07AP-198, 2007-Ohio-7139, the Tenth Appellate District found that the trial court did not abuse its discretion in hearing new evidence from a guardian ad litem despite a long time lapse between the close of the parties' case and the motion when grandmother may have suffered two heart attacks, one party had been evicted, and there was a question as to where a child was attending school. Such evidence could have a significant impact on the evaluation of the child's best interest. *Id.* at ¶ 22.

{¶ 19} Subsequent to Father filing his motion to admit new evidence, there was evidence that Alexa visited the Mayerson Clinic, alluding to sexual abuse. However, because this evidence was not initially before the trial court, we cannot consider it at this time. Nevertheless, there was new evidence contained in Father's affidavit that the trial court should have considered. New evidence contained in the affidavit included Alexa's behavioral incidents at school and the fact that Alexa required counseling. In the affidavit, Father states that Alexa had 161 behavioral episodes at school between September 1 and October 28, 2011. This evidence was not available for the hearings because Alexa was just beginning kindergarten at the time. The root of Alexa's behavioral issues that may be discovered through counseling could be vital to determining the children's best interest. Consequently, we find that the trial court abused its discretion by not considering the new evidence.

{¶ 20} Because the trial court did not consider all relevant evidence in making the custody determination, we find that the trial court necessarily abused its discretion by designating Mother the sole residential parent and legal custodian of the parties' two minor children. On remand, the trial court should consider this new evidence to determine the best interest of the children, which may or may not change its evaluation of the weight of the

evidence. Father's first, second, and third assignments of error are all sustained.

{¶ 21} We do note, however, that Mother seems to be exhibiting a pattern of lack of communication with Father. Father's motion to admit new evidence reflected a lack of communication by Mother. Father averred that Mother enrolled Alexa in counseling at Catholic Charities of Southwest Ohio without consulting him. Father also averred that Mother did not notify him of an injury Rylan sustained until after he had been released from the hospital. Furthermore, Mother had conferences with teachers on September 15, 2011 and October 31, 2011, of which Father claims he received no notice. However, this is not new evidence. There was ample evidence presented that Mother failed to consult with Father about important decisions regarding the children, including where to send the children to school, enrolling in dance lessons, and choice of pediatrician. Furthermore, Father's denial of parenting time could be traced to a lack of communication. While not new evidence, we are concerned that the affidavit attached the "Motion to Admit Evidence" indicates that the lack of communication by Mother may be a continued pattern.

{¶ 22} Assignment of Error No. 4:

{¶ 23} THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING AN AWARD OF SPOUSAL SUPPORT TO BE APPROPRIATE * * *.

{¶ 24} Father argues that the trial court abused its discretion in awarding Mother spousal support for several reasons. First, Father argues that the trial court abused its discretion in awarding Mother spousal support when Mother and her paramour are cohabitating. Second, Father asserts that the trial court abused its discretion by not considering Mother's need for support. Finally, Father contends that the trial court abused its discretion in awarding Mother spousal support when, combined with the trial court's child support order and allocation of debt, Father has negative monthly income.

{¶ 25} The trial court considered the appropriate factors to award spousal support as

enumerated by R.C. 3105.18(C)(1), and also considered the fact that Mother and her paramour commingled finances. The trial court then awarded Mother $2,250 per month in spousal support. Additionally, the trial court stated that "[t]he spousal support shall terminate upon the death of either party, remarriage of Ms. Renn-Ohmer or cohabitation of Ms. Renn-Ohmer in a partner like relationship as defined by Ohio law." With this statement, the trial court impliedly found that the relationship between Mother and her paramour did not constitute cohabitation as defined by Ohio law.

{¶ 26} Father argues that the trial court erred in making this determination because the relationship between Mother and her paramour actually constitutes cohabitation as defined by Ohio law. Father asserts that Mother and her paramour are cohabitating because Mother lives in a house owned by her paramour, they are showing the children "how a husband and wife or man and woman are supposed to behave," and their funds are commingled. In contrast, Mother contends that her relationship with her paramour does not constitute cohabitation because there was no evidence offered to show that they are actually living together. We agree with Father.

{¶ 27} It is well-established that a trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case. *Beamer v. Beamer*, 12th Dist. No. CA2009-08-107, 2010-Ohio-3143, ¶ 23, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). In turn, "absent an abuse of discretion, a spousal support award will not be disturbed on appeal." *Hutchinson v. Hutchinson*, 12th Dist. No. CA2009-03-018, 2010-Ohio-597, ¶ 16. An abuse of discretion is more than error of law or judgment; it requires a finding that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d at 219. A finding of "cohabitation during the pendency of the divorce should logically be a factor to bar an original award of support." *Keith v. Keith*, 12th Dist. No. CA2010-12-335, 2011-Ohio-6532, ¶ 9. However, it is

important to note that while cohabitation is a factor to be considered in awarding spousal support, it does not serve as an outright bar of spousal support. *Id.* at 12.

{¶ 28} It is a question of fact determined by the trial court on a case-by-case basis as to whether a particular relationship or living arrangement constitutes cohabitation. *Marley v. Marley*, 12th Dist. No. CA97-03-072, 1997 WL 632866, *2 (Oct. 13, 1997); *Guggenbiller v. Guggenbiller*, 9th Dist. No.10CA009871, 2011-Ohio-3622, ¶ 8. Consequently, an appellate court will not overturn a trial court's finding in regard to cohabitation as long as it is supported by some competent, credible evidence. *Moore v. Moore*, 12th Dist. No. CA95-05-013, 1996 WL 42329, *2 (Feb. 5, 1996); *Austin v. Austin*, 170 Ohio App.3d 132, 2007-Ohio-676, ¶ 6 (9th Dist.). In determining whether competent and credible evidence exists, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Keith* at ¶ 12, quoting *Bey v. Bey*, 3rd Dist. No. 10-08-12, 2009-Ohio-300, ¶ 15.

{¶ 29} Cohabitation contemplates a relationship that approximates, or is the functional equivalent of, a marriage. *Keeley v. Keeley*, 12th Dist. Nos. CA99-07-075, CA99-080-080, 2000 WL 431362, * 1 (Apr. 17, 2000), citing *Piscione v. Piscione*, 85 Ohio App.3d 273, 275 (9th Dist.1992). There are three principal factors for courts to consider when determining whether cohabitation exits, which are: (1) actually living together (2) of a sustained duration (3) with shared expenses with respect to financing and day-to-day expenses. *Keith* at ¶ 11. In turn, cohabitation "requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the spouse and the paramour so as to be the functional equivalent of a marriage." *Cravens v. Cravens*, 12th Dist. No. CA2008-02-033, 2009-Ohio-1733, ¶ 10.

{¶ 30} In this case, there was evidence presented that Mother and her paramour

- 9 -

purchased a home together. Mother provided a partial down payment consisting of closing costs, and her paramour is responsible for the actual mortgage. Mother testified that the mortgage of $1,800 per month was too high for her to pay, so she entered into a rental agreement with her paramour to pay him $1,560.76 per month. Mother testified that she and her paramour were "setting * * * a good example for [the children] of how a husband and wife or man and woman are supposed to behave." When asked whether the relationship was "more than casual," Mother responded "well, of course it is. He is carrying a mortgage for me." Mother and her paramour opened a joint bank account in February 2011, so that the paramour could transfer money to Mother faster in order to ensure she paid her bills on time. Mother testified that her paramour did not intend to live with her because he is in the United States Navy and stationed in Virginia. Nevertheless, Mother testified that her paramour has stayed the night with her with the children present when he was in Ohio. Furthermore, he is planning to move to Ohio when he retires from the Navy next year. Consequently, there is evidence that Mother and her paramour live together when he is in Ohio in the house they purchased together, their relationship is lasting in duration, and they share living expenses. In light of this evidence, and the fact that Mother's paramour is in the United States Navy and stationed in Virginia necessarily limits the amount of time he spends in Ohio, we find that there is no competent credible evidence to support the trial court's finding that Mother and her paramour are not cohabitating.

{¶ 31} As stated above, the mere fact that Mother and her paramour are cohabitating does not bar an award of spousal support. However, the trial court included a clause in the order that spousal support was to terminate upon Mother's cohabitation "in a partner like relationship as defined by Ohio law." With this clause, we find that the award of spousal support was an abuse of discretion as Mother and her paramour are cohabitating as defined by Ohio law. Father's fourth assignment of error is sustained.

{¶ 32} Assignment of Error No. 5:

{¶ 33} THE TRIAL COURT'S FAILURE TO INCLUDE THE SECOND MORTGAGE AS MARITAL DEBT AND THE TRIAL COURT'S FINDING THAT [MOTHER'S] PREMARITAL TAX DEBT WAS 100% MARITAL WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 34} Father argues the trial court erroneously found that a second mortgage on the marital residence did not exist, and thus erred in failing to include it as marital debt. Furthermore, Father argues the trial court erroneously found Mother's 2005 tax liability to be from 2007, and thus erroneously included it in the marital debt. We agree.

{¶ 35} Prior to making any division of property, the trial court must determine what property is marital and what property is separate. R.C. 3105.171(B); *Brown v. Brown*, 12th Dist. No. CA2008-08-021, 2009-Ohio-2204, ¶ 11. To do this, the trial court must know what constitutes "during the marriage." "During the marriage" typically means the period of time between the date of the marriage through the date of the final divorce hearing. R.C. 3105.171(A)(2)(a). However, if a trial court determines that the use of one or both of these dates would be inequitable, the trial court may choose dates that would be equitable in determining marital property. R.C. 3105.171(A)(2)(b). Furthermore, when a trial court makes a distributive award of property, the trial court "shall specify the dates it used in determining the meaning of 'during the marriage.'" R.C. 3105.171(G). Property acquired during the marriage is presumed to be marital. R.C. 3105.171; *Vergitz v. Vergitz*, 7th Dist. No. 05 JE 52, 2007-Ohio-1395, ¶ 12. Likewise, any property that was acquired by one spouse prior to the date of the marriage is presumed to be separate. R.C. 3105.171. Although the statute does not mention debt as an element of marital and separate property, the rules concerning marital assets have been consistently applied to marital and separate debt. *Marrero v. Marrero*, 9th Dist. No. 02CA008057, 2002-Ohio-4862, ¶ 43; *Vergitz* at ¶ 12.

{¶ 36} A trial court's classification of debt as marital or separate is reviewed under the manifest weight of the evidence standard. *Williams v. Williams*, 12th Dist. No. CA2006-09-103, 2007-Ohio-2996, ¶ 38. Manifest weight "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Baird v. Crop Prod. Servs., Inc.*, 12th Dist. Nos. CA2011-03-003, CA2011-04-005, 2012-Ohio-4022, ¶ 17, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. Furthermore, "[t]he appellate court must be guided by a presumption that the trial court's factual findings are correct since the trial judge 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Holland v. Garner*, 12th Dist. No. CA2009-09-226, 2010-Ohio-2963, ¶ 8, quoting *McGuire v. Sprinkle*, 12th Dist. No. CA2006-06-069, 2007-Ohio-2705, ¶ 19. However, "the court of appeals shall give due regard to the opportunity of the [trial court] to judge the credibility of the witnesses, and shall accept the findings of fact of the [trial court] *unless they are clearly erroneous.*" (Emphasis added.) *Koon v. United States*, 518 U.S. 81, 97, 116 S.Ct. 2035 (1996).

{¶ 37} In this case, the trial court found that while Father testified regarding a second mortgage with a balance of $57,000, he provided no documentation regarding this loan. The trial court specifically found that the only debt owed to Wells Fargo was a VISA account that required a monthly payment of $230. At a hearing, Father responded in the affirmative to a leading question that the second mortgage was with Wells Fargo. However, Father subsequently testified regarding a VISA balance owed to Wells Fargo regarding a loan to replace windows. Concerning a second mortgage, Father testified that he owed a second mortgage with a balance of $56,000 or $57,000 with a monthly payment of $668 per month. Exhibit 10, a Chase bank statement, shows that a payment was made to Citimortgage for $687.71 on July 26, 2011. This mortgage payment is in addition to the mortgage payment to

ASC for $1,092.08 made on July 18, 2011. This is also in addition to a $270 payment made to Wells Fargo on July 8, 2011 as reflected in Exhibit 13. Consequently, there is clearly evidence of a second mortgage. We find the trial court erred in not including the second mortgage in the property division.

{¶ 38} The trial court also found Father and Mother to be jointly and severally liable for the marital tax debts from both "2007 & 2009." On the property division worksheet, the trial court specifically found that the amount owed on the 2007 tax debt was $45,570.64. The trial court allocated half of this amount to Father. Despite the trial court finding that this tax debt was from 2007, Mother testified that this tax debt was from 2005. Furthermore, Mother identified Exhibit J as a "tax bill for myself." Exhibit J indicates that this tax liability was incurred during the tax period of December 31, 2005. Consequently, the trial court's classification of the 2005 tax debt as a 2007 marital debt was against the manifest weight of the evidence.

{¶ 39} There is some discrepancy as to what constitutes "during the marriage." The parties were married on June 11, 2005. The trial court specified the valuation date of February 23, 2011, but it did not explicitly use the parties' date of marriage as the beginning of the marriage. The trial court found the residence to be marital property, despite the property being titled solely in Father's name and purchased prior to June 11, 2005. The trial court found the residence constitutes marital property because the parties acknowledged they were cohabitating in the residence since its purchase in 2004. Essentially, the trial court found that utilizing the actual date of marriage to classify the residence as separate or marital property was inequitable. Consequently, on remand, in addition to including the second mortgage in the property division, the trial court must clarify the dates it used to constitute "during the marriage," and whether utilizing the actual marriage date is inequitable. The trial court must then apportion the 2005 tax debt as marital or separate debt accordingly. Father's

fifth assignment of error is sustained.

{¶ 40} Judgment reversed and cause remanded.

S. POWELL, P.J., and PIPER, J., concur.