[Cite as *English v. AK Steel Corp.*, 2016-Ohio-5287.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| CLYDE ENGLISH, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2015-11-194 |
| | : | O P I N I O N |
| - vs - | | 8/8/2016 |
| | : | |
| AK STEEL CORPORATION, | : | |
| Defendant-Appellee. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2014 01 0045

David E. Stenson, 131 South Ludlow Street, Suite 316, Dayton, Ohio 45402, for plaintiff-appellant

Frost Brown Todd LLC, Richard L. Moore, Matthew O. Wagner, 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202, for defendant-appellee

**PIPER, J.**

{¶ 1} Plaintiff-appellant, Clyde English, appeals a decision of the Butler County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, AK Steel Corporation.

{¶ 2} AK Steel hired English in 2007 to work in its coke plant, and his employment continued for a time with little incident. However, in 2009, English applied for a different job

with AK Steel, and moved locations to the cold strip mill where his supervisor was Rick Zika. English was late to work on the first day of his new job at the cold strip mill, and continued to arrive late multiple times over the next few weeks. English was also absent from his shift on several occasions, and at times did not inform AK Steel of his absence. Over the course of the next several months, English repetitively arrived late for work, missed entire shifts, and failed to call-off properly. Zika administered multiple disciplinary actions to English, including oral and written warnings as well as suspensions.

{¶ 3} When English was at work, he received disciplinary actions for making job-related mistakes. English also violated safety rules and was disciplined for talking on his cell phone while driving on company property. On a night in January 2011, a supervisor observed English sleeping while he was supposed to be training for a new position. The supervisor called another supervisor over to observe English, and the second supervisor agreed that English was asleep. English was terminated after an investigation into the sleeping issue.

{¶ 4} English then filed a suit against AK Steel, alleging that his termination was motivated by race, and that he was subjected to a racially hostile work environment during his employ. English claimed that during the time he was employed at AK Steel, black employees received harsher penalties for infractions, racial slurs appeared on walls, and white employees were able to violate rules without repercussions.

{¶ 5} AK Steel moved for summary judgment following discovery. In support of his response to AK Steel's motion for summary judgment, English offered two affidavits, one from himself and one from a former co-worker, both of which were untimely filed. The trial court found the affidavits inadmissible and noted that even if properly considered, the affidavits would not have raised any genuine issues of material fact. The trial court then granted summary judgment in favor of AK Steel on all issues. English now appeals the trial

court's order, raising the following assignment of error:

{¶ 6}   THE COURT ERRED IN FINDING THAT APPELLANT DID NOT PROVIDE EVIDENCE OF DISCRIMINIATION SUFFICIENT TO WITHSTAND SUMMARY JUDMGENT.

{¶ 7}   English argues in his assignment of error that the trial court erred in granting summary judgment in favor of AK Steel.

{¶ 8}   This court's review of a trial court's ruling on a summary judgment motion is de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124, ¶ 16. Civ.R.56 sets forth the summary judgment standard and requires that there be no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion which is adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 9}   The nonmoving party may not rest on the mere allegations of his pleading, but his response, "by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). A dispute of fact can be considered "material" if it affects the outcome of the litigation. *Myers v. Jamar Enterprises*, 12th Dist. Clermont No. CA2001-06-056, 2001 WL 1567352, *2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

**A. Affidavits**

{¶ 10}   As previously stated, the trial court found that two affidavits English attempted to submit in support of his memorandum in opposition to AK Steel's motion for summary judgment were inadmissible.

{¶ 11}   The admission or exclusion of relevant evidence rests within the discretion of the trial court.  *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 17.   An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent an abuse of discretion.  *League v. Collins*, 12th Dist. Butler No. CA2013-03-041, 2013-Ohio-3857, ¶ 8.   An abuse of discretion is more than an error of judgment, it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.  *Hornsby v. Gosser*, 12th Dist. Warren No. CA2013-12-134, 2015-Ohio-162, ¶ 8.

{¶ 12}   Regarding English's affidavit, the record clearly indicates, and English does not deny, that his affidavit was unsigned at the time he submitted it in support of his response to AK Steel's motion for summary judgment.  "Unsigned affidavits have no evidentiary value." *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 14, 2011-Ohio-6009, ¶ 20.   The unsigned affidavit was therefore properly excluded by the trial court. Additionally, and throughout English's response to AK Steel's motion for summary judgment, English relied upon an affidavit from a former co-worker.  However, the affidavit was not attached and was not filed with the court.  As such, English did not support his response to AK Steel's motion for summary judgment with an affidavit as prescribed in Civ.R. 56(E).

{¶ 13}   English tried to submit his signed affidavit and the affidavit from his co-worker on the day of the hearing on AK Steel's motion for summary judgment.  The record indicates that the trial court found both affidavits untimely because they were not properly submitted at the time English filed his response, and also found that neither affidavit was "properly before the Court."  We find no abuse of discretion in the trial court's decision to exclude the two affidavits as untimely filed given that neither affidavit was properly submitted at the time English filed his response to AK Steel's motion for summary judgment and English attempted to file both affidavits on the day of the summary judgment hearing.

{¶ 14}   Because the two affidavits were properly excluded, English had a duty as

provided in Civ.R. 56 to set forth specific facts showing the existence of a genuine triable issue as to the claims of racial discrimination and hostile work environment. Throughout English's response to AK Steel's motion for summary judgment, as well as his brief to this court, English did not make reference to any evidence in the record, such as his deposition, to support his Civ.R. 56 burden. Instead, English's citations in support of his claims were to the inadmissible affidavits. Even absent his citations to the admissible evidence, this court has reviewed the entire record, and we find that no genuine issues of fact remain to be litigated.

### B. Racial Discrimination

{¶ 15} According to R.C. 4112.02 (A), an unlawful discriminatory practice includes discharging an employee without just cause because of the employee's race or color.

{¶ 16} The Ohio Supreme Court has recognized that a plaintiff may establish a prima facie case of discrimination in one of two ways, either by using the indirect method of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817(1973), or by directly proving the prima facie case through the presentation of evidence of any nature to show that the employer was more likely than not motivated by a discriminatory animus. *Mauzy v. Kelly Serv., Inc.*, 75 Ohio St.3d 578 (1996).

{¶ 17} Pursuant to the *McDonnell Douglas* test, a plaintiff may establish a prima facie case of racial discrimination by demonstrating: (1) that he is a member of a racial minority or protected class, (2) that he suffered an adverse employment action or that his employment was terminated, (3) that he was qualified for the position, and (4) that similarly-situated nonprotected employees were treated differently. *Stallworth v. Wal-Mart Stores E., L.P.*, 1st Dist. Hamilton No. C-150355, 2016-Ohio-2620, ¶ 26.[1]

---

1. The court in *McDonnell Douglas* listed the following factors as necessary to prove a prima facie case for discriminatory non-hiring: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for

{¶ 18} The record indicates that English is a member of a protected class, that he suffered an adverse employment action given his termination, and that he was qualified for employment in the cold strip mill.[2] Thus, English has fulfilled the first three elements of a prima facie case. However, English has failed to set forth specific facts to demonstrate that any genuine issues of material fact require litigation regarding the fourth element of the test: that similarly-situated nonprotected employees were treated differently.

{¶ 19} "To be similarly situated, the parties to be compared must have dealt with the same supervisor, have been subjected to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Smith v. Expressjet Airlines, Inc.*, 8th Dist. Cuyahoga No. 101336, 2015-Ohio-313, ¶ 15, jurisdiction declined, 143 Ohio St.3d 1464, 2015-Ohio-3733.

{¶ 20} In regard to the claim of disparate treatment, English asserted that he had been treated differently than white employees. However, English was unable to point to any evidence in the record that white employees were not disciplined for violations, or that white employees were permitted to violate rules and company policy without sanction.

{¶ 21} English did not report any incidents of discrimination to AK Steel during his employment. During his deposition, and when asked how the disparate treatment would

which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817(1973). However, the court also noted that the factors would change based on the type of discrimination alleged, as well as what action the employer took regarding the plaintiff. *Id.* Thus, we list the factors courts generally consider when a plaintiff alleges racial discrimination in termination cases rather than the verbatim factors set forth in *McDonnell Douglas* specific to nonhiring.

2. English's poor job performance did not make him unqualified for the position from which he was terminated. Instead, the "prima facie burden of showing that a plaintiff is qualified can be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Smith v. Expressjet Airlines, Inc.*, 8th Dist. Cuyahoga No. 101336, 2015-Ohio-313, ¶ 14, jurisdiction declined, 143 Ohio St.3d 1464, 2015-Ohio-3733.

occur, English on several occasions stated that he did not feel he could address how others were treated because "you cannot involve another union brother."  Later in the deposition, English was asked why he never reported any incidents of discrimination to AK Steel. English responded that he was not permitted to address differential treatment between himself and other employees because such employees were his "union brothers and that was a violation" of unspoken union rules.

{¶ 22}  Moreover, English did not present any evidence that employees with a similar work history to his had received more favorable treatment because they were white.  For example, English alleged that he was often subject to random drug testing.  However, English only relayed hearsay statements regarding what other people had told him regarding random drug testing, but did not offer an exhibit or evidence that indicated that he was in fact, subject to more drug tests or different treatment.

{¶ 23}  Nor could English answer questions regarding accusations that white employees were treated differently regarding attendance issues.  For example, English asserted that white employees were often late, as he was, to meetings but did not incur punishment.  AK Steel's counsel asked English if he knew whether the white employees who entered a meeting late could have had an excused tardiness.  Rather than give any indication regarding his knowledge of such excused lateness, English responded, "there was no excuses for tardiness, unless – there was none."  When asked again whether he knew if the other late employees had an excused reason for being late, English responded, "No, sir, I don't."  In response to a direct question of which white employees were permitted to arrive late, English responded, "I can't give you specific names * * *."

{¶ 24}  When English was asked specifically if he had names of white employees who were tardy in the same way that English was, but did not receive discipline, English responded, "No, I don't.  Not right offhand."  At a later point in the deposition, English was

asked whether he had reason to believe that his discipline had anything to do with race, and he responded, "all of it's based on my race." AK Steel's attorney then asked for specifics, and English responded, "I can't recall the specific details * * *."

{¶ 25} English also alleged that white employees could call off and not be disciplined, while he was often disciplined for his attendance, or lack thereof. However, when English was asked for specifics, he was unable to give details in regard to his assertion. English was asked, "so you don't know whether or not any of these individuals were actually disciplined for calling off on any of these days, do you? * * * you don't have any personal knowledge?" English responded, "no, sir." Later in the deposition, English was once more asked whether he had "any idea" if the white employees received any discipline for being absent, and English responded, "I don't have any idea what the discipline was, if there was any." English was also asked whether he knew of any white employee who did not call in and was not placed back on the work schedule upon returning, and English responded, "not right offhand, no, sir."

{¶ 26} Other than attendance-related issues, English was also unable to point to any evidence that his supervisor, Zika, treated him differently than white employees in regard to discipline or judging work performance. For example, English was asked whether Zika had written-up white employees for poor work performance similar to the write-up he received for poor work performance, and English responded, "yes." English also confirmed that even when he alleged that white employees did not receive punishment for certain actions, he did not know the history of the employees or if such violations may have been the employee's first violation. There is no indication in the record that English was able to demonstrate that race played any role in the way that Zika treated employees that he supervised.[3]

---

3. English offered an accusation that one specific female employee received better treatment than him regarding work performance because she was a supervisor's mother-in-law, not because of race.

{¶ 27} Moreover, English was unable to point to evidence in the record that he did not have differentiating circumstances to distinguish his employment record from that of his co-workers. The record is replete with instances of English's violations of AK Steel's policies on attendance, calling off, as well as violations of work safety and performance duties. The record also contains evidence of English's multiple suspensions and disciplinary actions. For example, English confirmed during his deposition that he had 32 time-clock violations, and testified that he did not believe that his discipline for such violations was related to his race.

{¶ 28} English also confirmed that a particular write-up regarding poor work performance when working with coils was accurate in the facts. There is no evidence in the record that English's co-workers who he claims received disparate treatment had similar disciplinary histories. Multiple times, English was asked to provide names and details of white employees who had similar disciplinary histories as he had, and English could not name any. At one point, English was asked to provide "actual statistics" in terms of employees' work history, and English responded, "I don't have it – I don't have it off the top of my head."

{¶ 29} Additionally, and specific to the actual incident that led to English's termination, AK Steel's attorney asked English whether he was aware of any white employee who had been caught sleeping and was not terminated. English responded, "No." However, English later asserted that a white crane operator fell asleep on the job and was not disciplined. Yet, English testified in his deposition that he did not personally observe the operator sleeping and had no personal knowledge of the situation. English was further asked whether management actually saw the operator sleeping, English responded, "I don't - - I don't think so. I don't know." Later in the deposition, English confirmed that when he filed a grievance regarding being terminated for sleeping, he did not "raise the issue of race" in his grievance to the union. English also confirmed that in his past grievances filed with the union, none

listed race as an issue.

{¶ 30} Near the end of English's deposition, AK Steel's counsel restated the many violations and discipline English incurred during his employment. In regard to the specific violations, AK Steel's counsel asked English whether he knew of any white employees who had similar violations or had similar disciplinary histories to English that were not disciplined. English responded that he did not know of any white employees who were treated differently and that he was unaware of the white employees' work and disciplinary history. At no time was English able to offer any specific details regarding any white employee with similar work histories who received better treatment.

{¶ 31} After reviewing the record, we find that English failed to point to any evidence in the record to indicate that any genuine issues of material fact remained to require litigation on the racial discrimination claim. At no point did English demonstrate that reasonable minds could differ as to whether white employees were treated differently, as there was no evidence in the record that such disparate treatment occurred. As such, the trial court properly granted summary judgment.

## C. Hostile Work Environment

{¶ 32} English also filed a claim that during his employment with AK Steel, he was subjected to a hostile work environment.

{¶ 33} To establish a claim brought under R.C. Chapter 4112 against an employer for hostile work environment created by racial harassment, a plaintiff must establish: (1) that the employee was a member of the protected class, (2) that the employee was subjected to unwelcome harassment, (3) that the harassment complained of was based upon race, (4) that the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment, and (5) the existence of respondeat superior liability. *Courie v. ALCOA*, 162

Ohio App.3d 133, 2005-Ohio-3483, ¶ 24 (8th Dist.). "Conduct that is merely offensive is not actionable as hostile work environment." *Hoyt v. Nationwide Mut. Ins. Co.*, 10th Dist. Franklin No. 04AP-941, 2005-Ohio-6367, ¶ 69. Instead, a hostile work environment exists "when the 'workplace is permeated with discriminatory intimidation, ridicule, and insult, sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.*, quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399 (1986). The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the employee must subjectively perceive the environment as hostile or abusive. *Hoyt* at ¶ 69.

{¶ 34} Similar to the racial discrimination claim, English did not raise any evidence to demonstrate the existence of a genuine issue regarding his claim that there was a hostile working environment at AK Steel during his employment. While English is a member of the protected class, there is no evidence in the record specific to the other factors of the hostile work environment claim. English asserts that AK Steel permitted racial slurs on the walls, spoken slurs, and critical statements about President Obama. However, there is no evidence in the record, other than the inadmissible affidavits, that any slurs, statements, or criticisms occurred, or that even if such slurs, statements, or criticisms occurred, they were severe or pervasive enough to create a hostile working environment.

{¶ 35} Other than the inadmissible affidavits, there is no indication in English's deposition that he personally observed or encountered written or verbal racial slurs. While English did indicate that slurs were "hollered out" in the parking lot, he clearly indicated that such was never reported to management, and there is no indication in the record that English suffered a hostile work environment because of any incidences occurring in the parking lot.

{¶ 36} English also argues that he was subjected to a hostile work environment because of the way supervisors and other employees treated him. For example, English

asserts that Zika and another supervisor often took a rude "tone" with him, and that other employees were also rude to him and swore at him during training. When asked whether there were any specific statements made to him by the supervisor that took a "tone" with him, English responded, "Not that I can recall." Moreover, there is no evidence in the record that any rude treatment, if such truly occurred, was based on English's race.

{¶ 37} In fact, English admitted on several occasions that the discipline he received was not based on his race, and when asked to recall discriminatory statements made against him, he responded, "at this point, I cannot recall." English was also asked to address "specific discriminatory comments" that Zika may have made against him, to which English responded, "I can't recall any specifics right now. * * * It doesn't come to my memory."

{¶ 38} There is no indication in the record that English was exposed to a hostile work environment such that it interfered with his work. Furthermore, as a result of English not being able to provide specific information during his deposition testimony, English was unable to provide a factual basis establishing the existence of respondeat superior liability. Similar to the racial discrimination claim, English did not point to any evidence in the record to demonstrate that genuine issues of material fact remain to be litigated regarding the hostile work environment claim.

{¶ 39} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.