[Cite as *Delgado v. Delgado*, 2018-Ohio-4938.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| TAMMY S. DELGADO, | : | CASE NO. CA2018-03-007 |
| Plaintiff-Appellant, | : | O P I N I O N<br>12/10/2018 |
|  | : |  |
| - vs - | : |  |
|  | : |  |
| PETER J. DELGADO, | : |  |
| Defendant-Appellee. | : |  |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2015DRA483

Beth Silverman & Associates, LLC, Trista Portales Goldberg, 30 Garfield Place, Suite 750, Cincinnati, OH 45202, for plaintiff-appellant

Michael A. Kennedy, 70 North Riverside Drive, Batavia, OH 45103, for defendant-appellee

**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, Tammy S. Delgado, appeals the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, finding her in contempt, denying her motion for attorney fees, and terminating an order directing defendant-appellee, Peter J. Delgado, to pay her spousal support.

{¶ 2} On June 27, 2016, Tammy and Peter divorced pursuant to a decree of

divorce. The couple have two minor children issue of their marriage. The divorce decree specified that Peter pay spousal support of $1,000 per month for 24 months effective January 1, 2016. The decree provided that the spousal support terminates on December 31, 2017, or earlier based on certain enumerated events, including Tammy's "cohabitation with a nonrelated male."

{¶ 3} A final decree of shared parenting allocated the parental rights and responsibilities for the parties' minor children. The shared parenting plan ("SPP") provided each party extended parenting time with the children. In the event a party intended to exercise extended parenting time, the SPP required that parent to provide the other parent 30 days advance written notice.

{¶ 4} On March 24, 2017, Peter moved to terminate spousal support based upon Tammy's alleged cohabitation with a nonrelated male, Aurelio Zarinana. Peter also moved the court to find Tammy in contempt for failing to abide by the extended parenting time provisions of the SPP. On April 4, 2017, Tammy moved to terminate the SPP, and on May 1, 2017, filed a motion for an award of attorney fees incurred related to defending Peter's pending motions. After a hearing and by magistrate's decision of August 23, 2017, the magistrate denied Tammy's motion to terminate the SPP. The trial court adopted the magistrate's decision denying Tammy's motion to terminate the SPP without objection. On September 18, 2017, the magistrate held a hearing on Peter's motions to terminate spousal support and contempt and Tammy's motion for attorney fees. The hearing revealed the following facts.

{¶ 5} Tammy resides at 5602 Naomi Drive, Milford, Ohio. Tammy and Zarinana claim that Zarinana resides at 6501 Cornell Drive, Cincinnati, Ohio. According to Tammy's Facebook posts, she began a relationship with Zarinana in October 2015, several months before finalizing her divorce from Peter. Zarinana has four children, two of which reside

- 2 -

with him. Peter submitted several photographs posted on Tammy's Facebook page depicting her, Zarinana, and their respective children together on various occasions. The photographs indicate the couple took a trip to Chicago for Zarinana's daughter's wedding, visited an Ohio water resort, and cut down a Christmas tree and decorated it at Tammy's residence. Additionally, the photographs depict the couple generally at Tammy's residence, Zarinana driving Tammy's vehicle with Tammy and the children as passengers, and one photograph of Tammy, Zarinana, and the children together with the caption, "Family time blessed for the holidays." Numerous photographs depict the couple together with both families during year-end holidays, which were captioned "New traditions."

{¶ 6} Peter submitted a school note signed by Tammy and addressed to Zarinana's son's teacher which indicated the child was ill and unable to complete his assignment for the day. The note stated, "[w]e will have him do it tonight." Peter also submitted Zarinana's son's schoolwork and a library note which he found in Tammy's curbside trash.

{¶ 7} Tammy has DirecTV service at her home. The service contract is in the name of Juan L. Brito Chacon. Zarinana testified that Chacon is his colleague and that Chacon signed the service contract for Zarinana because Zarinana does not have credit. Zarinana claimed that he pays the DirecTV service bill. However, Tammy's debit card statements indicate that she paid the bill from December 2016 thru July 2017, with the exception of the March 2017 bill.

{¶ 8} Peter submitted an Ohio Secretary of State filing related to incorporating Zarinana's business. It lists 6501 Cornell Road as the business address. Tammy testified she assisted Zarinana in completing the paperwork online and paid the fee with her credit card. Additionally, Peter submitted several documents indicating Zarinana listed Tammy's Milford address as his own residence. These documents included a checking account statement, cellular telephone bill, and a hospital discharge form. Tammy testified Zarinana

used her address for the checking account because he was having issues consistently receiving his mail at the Cornell Road address. Tammy further claimed that the cell phone bill was a bundled account, which included her children's lines among several other lines, and that the bill listed her address so that she could receive a discount from DirecTV. Prior to October 2016, the cell phone bill listed the Cornell Road address. Zarinana paid the bill each month, except for June 2016 in which Tammy paid the bill. Finally, Tammy claimed she filled out the hospital discharge form and did not readily know Zarinana's Cornell Road address.

{¶ 9} In November 2015 and November 2016, Zarinana used an alias to purchase two televisions and a sound bar for Tammy. Tammy made two monthly payments for the televisions. Additional payments made by Tammy included a donation for Zarinana's child's school charity run, four of Zarinana's child support payments in August and September 2016 and January and February 2017, and hotel and travel costs for herself, Zarinana, and their respective children. Additionally, Tammy permitted Zarinana to use her department store credit card to purchase clothes for his children.

{¶ 10} On 35 occasions between December 11, 2016 and February 1, 2017, Peter made video recordings showing Zarinana's vehicle at different locations in Tammy's driveway between 12:00 a.m. and 6:00 a.m. Tammy claimed Zarinana typically did not sleep at her residence during the week, but he did stay over sometimes on weekends. She explained that Zarinana's vehicle at her house does not necessarily indicate his presence because she sometimes borrowed the vehicle and it often had mechanical issues preventing its use.

{¶ 11} Michael Pfeifer testified that he lives across the street from Tammy's residence and based upon his observations he believed Zarinana did not reside with Tammy. Israel Garza testified that he resided with Zarinana at the Cornell Road address

- 4 -

with his family and Zarinana's children.  Claudia Scott, Tammy's adult daughter, testified that she lives with Tammy and that Zarinana stays overnight sometimes, but he does not reside with them.

{¶ 12} Based upon the foregoing evidence, the magistrate found Tammy cohabitated with Zarinana and terminated Peter's spousal support effective January 1, 2017.

{¶ 13} The parties presented additional evidence with respect to Tammy's exercise of extended parenting time pursuant to the SPP.

{¶ 14} First, on October 18, 2016, Tammy sent Peter an e-mail informing him that she intended to exercise extended parenting time beginning December 15, 2016 and ending on December 21, 2016.  Tammy exercised that extended parenting time as scheduled.  However, on December 21, 2016, the day Tammy's parenting time was scheduled to end, she e-mailed Peter and notified him that she would not return the children until the following day.

{¶ 15} Next, on December 16, 2016, Tammy sent Peter an e-mail informing him that she intended to exercise extending parenting time from March 23, 2017 to March 29, 2017. On March 7, 2017, Tammy sent Peter an e-mail changing the dates of the extended parenting time to March 24, 2017 to March 30, 2017.

{¶ 16} The magistrate found Tammy in contempt for both occasions because Tammy unilaterally changed the dates of the extended parenting time without providing 30 days advance written notice pursuant to the SPP.  The magistrate awarded Peter reasonable attorney fees incurred in relation to the acts of contempt.

{¶ 17} Finally, Tammy sought reimbursement for her attorney fees, despite failing to prevail on any of the pending motions, due to the parties' disparity in income and her inability to pay the fees while providing for the children.  The magistrate found Tammy failed to provide any support for this position and denied her request.

{¶ 18} Tammy objected to the magistrate's decision. The trial court overruled her objections and Tammy timely appealed raising four assignments of error.

{¶ 19} Assignment of Error No. 1:

{¶ 20} THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING TAMMY COHABITED WITH AN UNRELATED MALE AND SAID FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 21} Tammy contends the trial court's cohabitation finding was not supported by competent, credible evidence.

{¶ 22} It is well-established that a trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case. *Beamer v. Beamer*, 12th Dist. Warren No. CA2009-08-107, 2010-Ohio-3143, ¶ 23, citing *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990). Therefore, an appellate court will not disturb a spousal support decision absent an abuse of discretion. *Hutchinson v. Hutchinson,* 12th Dist. Clermont No. CA2009-03-018, 2010-Ohio-597, ¶ 16. An abuse of discretion connotes more than error of law or judgment; it requires a finding that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 23} Whether a particular relationship or living arrangement constitutes cohabitation is a question of fact determined by the trial court on a case-by-case basis. *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 28. Consequently, an appellate court will not overturn a trial court's finding in regard to cohabitation as long as it is supported by some competent, credible evidence. *Id.* A manifest weight of the evidence challenge "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Baird v. Crop Prod. Servs. Inc.*, 12th Dist. Fayette Nos. CA2011-03-003 and CA2011-04-

005, 2012-Ohio-4022, ¶ 17, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. In determining whether competent and credible evidence exists, "a reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony." *Ohmer* at ¶ 28.

{¶ 24} Cohabitation contemplates a relationship that approximates, or is the functional equivalent of, a marriage. *Id.* at ¶ 29. In determining whether cohabitation exists, courts consider whether there is "(1) an actual living together; (2) of a sustained duration; and (3) with shared expenses with respect to financing and day-to-day incidental expenses." *Keith v. Keith*, 12th Dist. Butler No. CA2010-12-335, 2011-Ohio-6532, ¶ 11. Thus, cohabitation "requires not only a relationship, sexual or otherwise, of a permanent, continuing nature, but also some sort of monetary support between the spouse and the paramour so as to be the functional equivalent of a marriage." *Cravens v. Cravens*, 12th Dist. Warren No. CA2008-02-033, 2009-Ohio-1733, ¶ 10.

{¶ 25} After a thorough review of the record, we find the trial court did not abuse its discretion in finding Tammy and Zarinana cohabitated and said finding was not against the manifest weight of the evidence.

{¶ 26} Tammy contends "the evidence overwhelming[ly] supports a finding" of no cohabitation. While Tammy correctly asserts there is some evidence contrary to the trial court's finding, the greater amount of credible evidence supports a finding of cohabitation. Nonetheless, she asserts the magistrate failed to fully consider the contrary evidence she set forth and relied on speculative evidence set forth by Peter. Tammy also argues that the magistrate failed to identify specific facts upon which it based its finding that Tammy and Zarinana lived together for a sustained duration. Further, Tammy asserts the trial court

erred in determining that her and Zarinana shared expenses.

{¶ 27} In support of her argument that competent, credible evidence that she and Zarinana actually lived together is lacking, Tammy cites our opinions in *Cravens* and *Marley v. Marley*, 12th Dist. Butler No. CA97-03-072, 1997 Ohio App. LEXIS 4580 (Oct. 13, 1997). In both cases, there was significant evidence suggesting the former wives and their respective paramours were actually living together. *Cravens* at ¶ 17; *Marley* at *8-9. In both cases, we affirmed the trial courts' findings that cohabitation had not been established. *Cravens* at ¶ 17; *Marley* at *9. However, our resolution of both cases was not based upon a lack of evidence of "actually living together," but rather, a lack of evidence that there was financial support flowing between the former wives and their respective paramours so as to constitute the functional equivalent of a marriage. *Cravens* at ¶ 17; *Marley* at *9. Therefore, these cases do not provide the relevant factual comparison made by Tammy of the evidence necessary to establish the "actually living together" element of cohabitation.

{¶ 28} Contrary to Tammy's claim, the record contains competent, credible evidence that she and Zarinana actually lived together, for a sustained duration and shared expenses. Tammy's Facebook posts, including the photographs detailed above demonstrate that she, Zarinana, and their respective children enjoyed various occasions together, such as holiday events at Tammy's residence and out of town trips. Facebook photograph captions, such as "Family time blessed for the holidays" and "New traditions," disclose Tammy's subjective feelings concerning her relationship with Zarinana. *See, e.g.*, *Hosler v. Hosler*, 12th Dist. Clermont No. CA2017-10-052, 2018-Ohio-4486, ¶ 19 (considering relationship with one another's children in analyzing first two factors of cohabitation).

{¶ 29} The presence of Zarinana's vehicle in Tammy's driveway during early morning hours on 35 occasions between December 11, 2016 and February 1, 2017, Tammy's note

informing Zarinana's son's teacher that the child was ill and unable to complete his homework assignment for the day, Zarinana's son's schoolwork and a library note found in Tammy's curbside trash, numerous documents listing Tammy's address as Zarinana's residence, including bills, a checking account statement, cellular telephone bills, and a hospital discharge form, all support the trial court's finding that Tammy and Zarinana were actually living together for a sustained duration.

{¶ 30} The record also contains competent, credible evidence that she and Zarinana were sharing expenses with respect to financing and day-to-day incidental expenses. Zarinana paid Tammy's and her children's cell phone bill and purchased two televisions for Tammy. Tammy donated to Zarinana's child's school charity run, made four of Zarinana's child support payments, paid hotel and travel expenses for herself, Zarinana, and their respective children, and permitted Zarinana to use her department store credit card to purchase clothes for his children. *See, e.g.*, *Hosler* at ¶ 32-33 (considering shared cell phone plans and active participation with one another's children's school-related activities in cohabitation analysis).

{¶ 31} Based on the foregoing, the trial court found Tammy cohabitated with Zarinana. Tammy provided explanations for much of the foregoing and other evidence tending to show she and Zarinana were not cohabitating. The trial court, as is its prerogative, obviously did not find this evidence persuasive. As stated above, our review is guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony. Therefore, we defer to the trial court's determinations regarding the credibility of the witnesses and the weight of the evidence.

{¶ 32} Thus, the trial court did not abuse its discretion in finding Tammy cohabitated

with Zarinana and said finding was not against the manifest weight of the evidence. Accordingly, Tammy's first assignment of error is overruled.

{¶ 33} Assignment of Error No. 2:

{¶ 34} THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING TAMMY IN CONTEMPT FOR VIOLATION OF THE PARENTING PLAN.

{¶ 35} Tammy contends the trial court erred in finding her in contempt because it failed to apply the clean hands doctrine, as Peter had also violated the terms of the SPP.

{¶ 36} "Disobedience to court orders may be punished by contempt." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 11. To support a contempt finding, the moving party must establish by clear and convincing evidence that a valid court order exists, that the offending party had knowledge of the order, and that the offending party violated such order. *Maloney v. Maloney*, 12th Dist. Warren No. CA2015-10-098, 2016-Ohio-7837, ¶ 13. A trial court's decision in a contempt proceeding will not be reversed on appeal absent an abuse of discretion. *Id*. at ¶ 14.

{¶ 37} Tammy does not challenge the underlying facts and admits that she unilaterally changed the dates of her previously noticed extended parenting time within the 30-day notice period. Rather, Tammy asserts that the trial court erred in finding her in contempt for such actions because Peter had violated the SPP on a different occasion, and therefore, had "unclean hands."

{¶ 38} "The 'clean hands doctrine' of equity requires that whenever a party takes the initiative to set into motion the judicial machinery to obtain some remedy but has violated good faith by [his or] her prior-related conduct, the court will deny the remedy." *Bean v. Bean*, 14 Ohio App.3d 358, 363-64 (12th Dist.1983). "Thus, in order for the doctrine to bar a party's claims, the party must be found to be at fault in relation to the other party and in relation to the transaction upon which the claims are based." *Trott v. Trott*, 10th Dist.

Franklin No. 01AP-852, 2002 Ohio App. LEXIS 1068, *15 (Mar. 14, 2002).

{¶ 39} Assuming arguendo that Peter violated the SPP as Tammy alleges, Peter was not at fault in relation to Tammy's two violations of the SPP; therefore, the clean hands doctrine does not apply to bar Peter's contempt claims. *Compare id.* (finding doctrine did not apply where appellee's taking of marital property in violation of a restraining order was not related to appellant not allowing appellee to speak to their children during visitation periods), *with Carozza v. Carozza*, 12th Dist. Preble Nos. CA92-11-019 and CA92-11-020, 1993 Ohio App. LEXIS 3851, *11 (Aug. 9, 1993) (finding doctrine applied where appellant's consistent failure to pay child support *contributed to* appellee's inability to make mortgage payments).

{¶ 40} Accordingly, Tammy's second assignment of error is overruled.

{¶ 41} Assignment of Error No. 3:

{¶ 42} THE TRIAL COURT ABUSED ITS DISCRETION BY NOT RECALCULATING CHILD SUPPORT RETROACTIVELY.

{¶ 43} Tammy asserts the trial court erred by not recalculating child support retroactively following the termination of spousal support. Tammy contends that she relied on the court's advice in pretrial discussions concerning her motion to terminate the SPP that child support would be impacted by its decision regarding Peter's motion to terminate spousal support; therefore, she need not file a separate motion. However, the record is silent as to any representations made during the pretrial conference. The appealing party bears the burden of showing error by reference to matters in the record and where a reviewing court has nothing to pass upon due to omissions in the record, it must presume the regularity or validity of the lower court's proceedings and affirm. *Dudley v. Dudley*, 12th Dist. Butler No. CA2013-09-163, 2014-Ohio-3992, ¶ 25.

{¶ 44} Accordingly, Tammy's third assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING TAMMY ATTORNEY FEES.

{¶ 47} Tammy contends the trial court erred in not awarding her attorney fees incurred in defending Peter's motions due to her financial obligations and the disparity of incomes between the parties.

{¶ 48} After reviewing the record, we find the trial court did not abuse its discretion in denying Tammy's motion for attorney fees. In support of her argument, Tammy cites R.C. 3105.73(B), which provides that:

> In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶ 49} In its decision, the trial court considered Tammy's arguments with respect to her ability to pay her financial obligations and the disparity in the parties' respective incomes. Additionally, the trial court considered that she did not prevail on any of the motions at issue and was found in contempt for violating the SPP. With respect to contempt, R.C. 3109.051(K), provides, in pertinent part:

> If any person is found in contempt of court for failing to comply with or interfering with any order or decree granting parenting time rights issued pursuant to this section or section 3109.12 of the Revised Code or companionship or visitation rights issued pursuant to this section, section 3109.11 or 3109.12 of the Revised Code, or any other provision of the Revised Code, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as

determined by the court, that arose in relation to the act of contempt * * *.

{¶ 50} Therefore, pursuant to R.C. 3105.73(B), the trial court considered the parties' respective incomes, the parties' conduct, and the other relevant factor that she did not prevail on any of the motions. Thus, it did not abuse its discretion in not awarding Tammy attorney fees.

{¶ 51} Accordingly, Tammy's fourth assignment of error is overruled.

{¶ 52} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.