[Cite as *Carson v. Manubay*, 2023-Ohio-2015.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

PHILIP CARSON,                          :

    Appellant and Cross-Appellee,        :        CASE NO. CA2022-11-107

                                 :        O P I N I O N
    - vs -                                      6/20/2023

                                 :

MEGAN MANUBAY,                          :

    Appellee and Cross-Appellant.        :

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. CR 2021 05 0426

Law Office of Kristen L. Campbell, and Kristen L. Campbell, for appellant.

The Lampe Law Office, LLC, and Stephen Otte and M. Lynn Lampe, for appellee.

**PIPER, J.**

{¶ 1}   Plaintiff, Philip Carson (Husband), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, dividing marital property and awarding spousal support to defendant, Megan Manubay (Wife).  Wife cross-appeals the division of marital property.  For the reasons stated below, we affirm.

**Facts and Procedural History**

{¶ 2}　Husband and Wife were married in 2012.  They separated in early May 2021, and later that month, Husband filed for divorce.  A final hearing was held the following year in May of 2022 with a later valuation hearing in June.  The parties agreed to the division of most of their personal property and household goods, and the contested issues were Wife's request for spousal support and the division of certain marital property.

{¶ 3}　Husband graduated from medical school in 2012 and subsequently completed his medical residency and two fellowships in cardiology.  In 2019, he took a position at an Ohio hospital as a cardiologist and his income increased significantly: $149,044 in 2019, $489,684 in 2020, and $585,230 in 2021.  He also began earning significant bonuses, including a 2021 bonus of $83,400.  Wife assisted Husband financially while he was earning his credentials as a cardiologist.  Apparently, Wife's family also provided financial assistance and contributed large sums of money towards Husband's indebtedness from medical school.

{¶ 4}　Wife, after graduating from college, began working remotely in the accounts receivables department of her family's private preparatory school in Delaware.  She earned approximately $30,000 a year.  Simultaneously, Wife continued her focus on training and showing horses.  Since her youth, she had been regularly participating in equestrian competitions all over the country.  This time-consuming and expensive endeavor had been largely funded by her parents.

{¶ 5}　Only days before the final divorce hearing, the parties filed Joint Exhibit No. 1, which was a spreadsheet that listed and valued the marital property that needed to be divided: the proceeds from the sale of the marital home, vehicles, bank accounts, retirement accounts, credit card debt, and their 2021 federal income tax debt.  The parties stipulated to the division of most of this property.  Due to the property valuation date of June 30, 2021,

most of the property listed on the spreadsheet was valued as of that date. The exceptions were the income-tax debt and the proceeds from the sale of the marital home.

{¶ 6} The parties had purchased the marital home in 2020 for $350,000, using a zero-interest loan given to them by a member of Wife's family. The home was sold in 2022, a month or two before the final hearing, for $451,376.11. After paying off the loan balance of $158,710.26, the net proceeds of $292,665.85 remained to be divided.

{¶ 7} Each party claimed part of the net proceeds as separate property. During their marriage, the parties maintained separate bank accounts. Wife owned an account jointly with her mother, and her mother often deposited money into the account. Husband had a checking account into which the income he earned was deposited. The loan agreement for the marital home purchase required the parties to make an initial $70,000 payment with additional monthly payments of $5,000. Wife wrote a check for $35,000 of the initial payment drawn from her bank account and later made monthly payments totaling $15,000 from the same account. Husband paid the other half of the initial payment and made the majority of the other monthly payments.

{¶ 8} The parties made many improvements to the marital home, including a remodel of the kitchen and the installation of hardwood floors that together totaled $38,985. Wife paid for these home improvements using money from the bank account that she jointly owned with her mother. She claimed that the money she spent on the loan and improvements had been deposited into the bank account by her mother and was a gift to her alone. Therefore, she asked the trial court to award her $88,985 from the net proceeds of the sale as her separate, nonmarital property. For his part, Husband claimed that $55,000 of the net proceeds was his separate, nonmarital property because he paid $5,000 each month toward the loan from his bank account after Wife had moved out and until the marital residence was sold. After the valuation date of the parties' bank accounts, Husband

made eleven payments from his account.

{¶ 9} On August 25, 2022, the trial court issued its decision on property division and spousal support. For the purpose of making a division of marital property, the court defined "during the marriage" as running from the date of their ceremonial marriage and ending the date of the final hearing. The court distributed the vehicles, bank accounts, retirement accounts, and credit card debt as the parties stipulated in the jointly submitted spreadsheet. The court divided equally between the parties 2021 federal tax debt and Husband's 2021 bonus pay. The court also divided equally the net proceeds from the sale of the marital home.

{¶ 10} The court noted that Wife's mother did not testify that the money she deposited into her and Wife's joint bank account was intended as a gift solely for Wife. The court determined that the money she deposited into Wife's bank account for the initial purchase of the marital residence and the subsequent improvements was a gift to both parties as a couple, not a gift to Wife alone. When dividing the proceeds of the marital residence equally between the parties, the court did not explicitly address Husband's argument that his monthly payments on the marital residence made after Wife had moved out should be designated as his separate, nonmarital property.

{¶ 11} The trial court found that an award of spousal support to Wife was appropriate and reasonable. The court ordered Husband to pay Wife $12,000 per month for three years plus 30 percent of the gross amount of any bonus pay that he receives in 2022, 2023, 2024, and 2025. A decree of divorce was entered on November 1, 2022, that incorporated the court's property division and spousal support decisions.

{¶ 12} Husband timely appealed, and Wife cross-appealed.

## II. Analysis

{¶ 13} Husband challenges the spousal support award to Wife as well as the division

of property. Wife, in her cross-assignment of error, challenges only the division of property. A court in a divorce proceeding must first determine the division and disbursement of property and then consider whether to award spousal support. R.C. 3105.18(B). Accordingly, we begin our review with the property division.

**Division of property**

{¶ 14} Assignment of Error No. 2:

{¶ 15} A TRIAL COURT ERRS WHEN IT DOES NOT ALLOCATE PAYMENTS MADE ON A MARITAL ASSET AFTER THE DATE OF VALUATION TO THE SPOUSE WHO MADE THE PAYMENTS FROM HIS SEPARATE NON-MARITAL FUNDS.

{¶ 16} Cross-Assignment of Error:

{¶ 17} THE TRIAL COURT ERRED IN FAILING TO AWARD WIFE FOUR SEPARATE CREDITS TOWARDS HER SEPARATE PROPERTY WHERE THE MANIFEST WEIGHT OF THE EVIDENCE SHOWS THAT SHE PROVED BY CLEAR AND CONVINCING EVIDENCE THAT THESE SUMS WERE HER SEPARATE PROPERTY.

{¶ 18} A court distributes all the property owned by divorcing parties following a two-step procedure. R.C. 3105.171(B). The court must first classify the parties' property as marital property or separate property. Then, the court must disburse a spouse's separate property to that spouse and then divide the marital property equitably. *See* R.C. 3105.171(C)(1) and (D); *Hosler v. Hosler*, 12th Dist. Clermont No. CA2015-10-089, 2016-Ohio-5777, ¶ 6.

{¶ 19} "Marital property" and "separate property" are both statutorily defined. The definition of "marital property" pertinently includes:

> (i) All real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage; [and]

> (ii) All interest that either or both of the spouses currently has in

any real or personal property * * * and that was acquired by either or both of the spouses during the marriage[.]

R.C. 3105.171(A)(3)(a). Marital property does not include any "separate property." R.C. 3105.171(A)(3)(b). The pertinent definition of "separate property" is property that the court finds to be a "gift * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). Whether property is marital or separate is not determined solely by either the origins of the property or who holds title. R.C. 3105.171(H). It is the party claiming that property is separate property who bears the burden of proving that the property is nonmarital, separate property.

{¶ 20} To help distinguish marital from separate property and to value the marital property, the court must determine the dates of the marriage. "During the marriage" is statutorily defined as whichever of these time periods is applicable:

> (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce * * *;

> (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

R.C. 3105.171(A)(2).

{¶ 21} Appellate review of a property-division decision involves two different standards of review. *Cooper v. Cooper*, 12th Dist. Clermont No. CA2013-02-017, 2013-Ohio-4433, ¶ 13. The property division itself is reviewed for abuse of discretion. *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 54. But the classification of property as marital or separate is reviewed under a manifest-weight-of-the-

evidence standard. *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 8. "Manifest weight 'concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Ohmer v. Renn-Ohmer*, 12th Dist. Butler No. CA2012-02-020, 2013-Ohio-330, ¶ 36, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12. In a manifest-weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Eastley* at ¶ 20. The reviewing court must be guided by the presumption that the fact-finder got it right. *Ohmer* at ¶ 36; *Id.* at ¶ 21 ("If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment").

*Husband's separate property claim*

{¶ 22} Husband challenges the trial court's marital-property classification of $55,000 that he paid toward the marital-home loan. He argues that this amount should be classified as his separate property because he made the payments from his bank account after June 30, 2021, the date on which the parties' bank accounts were valued and divided.

{¶ 23} The parties had three separate bank accounts, and in the jointly filed spreadsheet they stipulated to the June 30, 2021 balances of these accounts. Wife had a Wells Fargo account that she jointly owned with her mother that had a balance of $1,555.44. Husband had two accounts in his name with Fifth Third Bank, one with a balance of $1,000.02 and the other with a balance of $49,426.92. The parties agreed that they would each keep their own accounts and that Husband would give Wife an equalizing payment of $24,435.75. It is not disputed that after June 30, 2021, Husband made loan payments

totaling $55,000 from one of his Fifth Third accounts. The loan balance when the marital home was sold that was stated on the parties' spreadsheet reflected the payments that Husband had made.

{¶ 24} The trial court's valuing and dividing of the bank accounts was not specifically addressed in its property decision, as those accounts were divided in the divorce decree, as agreed on by the parties. In the decree, the court did not state a value for each account. Rather, it awarded each account to the title holder and ordered that Husband give Wife the agreed equalization payment. In its property decision, the trial court stated that it had adopted the parties' stipulations in the spreadsheet. With respect to the proceeds from the sale of the marital home, the court found that proceeds from sale were $451,376.11 and that $158,710.26 was used to repay the loan, leaving net proceeds of $292,665.85, which the court divided equally between the parties. While it may have been better to do so, the court did not address Husband's argument that part of the proceeds from the sale of the marital residence should be designated as his separate property because he continued to make monthly payments after Wife moved out. The court was evidently not convinced by Husband's argument.

{¶ 25} The trial court used different valuation dates applicable to the parties' property. Some property was valued as of June 30, 2021, e.g., vehicles, credit card debt, retirement accounts, and bank accounts. Other property was valued on a different date, e.g., 2021 tax debt, bonus pay earned in 2021 and received in January 2022, and net proceeds of the marital home sale received in 2022. Using different valuation dates is not necessarily a problem, if doing so facilitates an equitable result. Why different dates were used is evident, and doing so was equitable and not unreasonable. In any event, neither party challenges the court's use of different valuation dates.

{¶ 26} The trial court did not adopt the June 30, 2021 valuation date as the date that

the marriage ended. In both the property-division decision and the divorce decree, the court stated that the "during the marriage" dates were the date of marriage through the end of the final hearing, in June 2022. Accordingly, as a matter of law, the income that Husband earned and had deposited into his bank account from July 2021 through June 2022 is presumed to be marital property, since it was acquired "during the marriage." It was Husband's burden to prove that this earned income constituted "separate property" under the definition in R.C. 3105.171(A)(6)(a). Evidence fulfilling the burden of proof was lacking.[1]

{¶ 27} This is not a case in which the trial court clearly lost its way and created a manifest miscarriage of justice. Construing the evidence in a way that is consistent with the divorce decree, we conclude that Husband fails to demonstrate that the trial court erred by not classifying as separate property the portion of the proceeds from the sale of the marital residence that he paid towards the loan while he lived there alone before its eventual sale.

{¶ 28} Husband's second assignment of error is overruled.

*Wife's separate property claim*

{¶ 29} In Wife's cross-assignment of error, she challenges the trial court's classification of $88,985 of the net proceeds from the marital home sale as marital property. She argues that it should have been classified as her separate property because the money was given to her as a gift. *See* R.C. 3105.171(A)(6)(a)(vii) (defining "separate property" as a "gift * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse").

{¶ 30} Wife claimed that the $50,000 that she paid towards the marital-home loan and the $38,985 that she paid for the marital home's kitchen remodel and hardwood floors

---

1. The money was not an inheritance, was not acquired before the marriage, was not passive income from separate property, was not acquired after a decree of legal separation, was not excluded by an antenuptial or postnuptial agreement, was not compensation for personal injury, and was not a gift. *See* R.C. 3105.171(A)(6)(a)(i)-(vii).

were gifts to her alone from her mother. The trial court disagreed and found that Wife's mother gave the money to both parties as a couple, not to Wife alone. The court found that Wife received money throughout the marriage from her family. Deposits from her mother were made to their joint account, but Wife's paychecks were deposited into that account too. Wife's mother had been very generous to Husband and Wife and helped them financially many times. Testimony from Wife's mother indicated that when she deposited money into the account for the marital home, it was intended to benefit both the parties as a couple. The trial court found that, on the whole, the testimony did not support Wife's claim that the money was intended for her alone. Accordingly, the court concluded that Wife failed to show that the gift money was intended to be hers exclusively.

{¶ 31} The weight of the evidence supports the trial court's finding that Wife failed to show the gift money was intended to be her exclusive property. Wife fails to convince us that the court clearly lost its way and created a manifest miscarriage of justice by finding that the money was marital property.

{¶ 32} Wife's cross-assignment of error is overruled.

**B. Spousal support award**

{¶ 33} Assignment of Error No. 1:

{¶ 34} A TRIAL COURT ABUSES ITS DISCRETION WHEN IT AWARDS SPOUSAL SUPPORT IN CONTRADICTION TO THE STATUTORY FACTORS; IN THE ALTERNATIVE A TRIAL COURT ABUSES ITS DISCRETION WHEN IT AWARDS SPOUSAL SUPPORT IN AN EXCESS AMOUNT WHEN CONSIDERING THE STATUTORY FACTORS.

{¶ 35} In the first assignment of error, Husband contends that the trial court should not have awarded spousal support at all. Alternatively, he challenges the amount and duration of support that the court awarded.

{¶ 36} In divorce proceedings, a court may award "reasonable spousal support" to either party. R.C. 3105.18(B). In determining whether spousal support is appropriate and reasonable, and in determining the amount and duration, the court must consider all the statutory factors listed in R.C. 3105.18(C)(1):

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶ 37} "[A] trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case." *Ohmer*, 2013-Ohio-330, at ¶ 27; *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 67 (1990). "[A]bsent an abuse of discretion, a spousal support award will not be disturbed on appeal." *Id.*, quoting *Hutchinson v. Hutchinson,* 12th Dist. Clermont No. CA2009-03-018, 2010-Ohio-597, ¶ 16.

{¶ 38} The trial court made numerous findings related to its spousal-support determination. The court found that the parties had been married for nine years and that Husband was 36 years old and Wife was 35 years old. After Husband finished medical school in 2012, he completed his medical residency and two medical fellowships before taking a position as a cardiologist in 2019. After reviewing Husband's employment record, the court found that Husband's earnings increased substantially.

{¶ 39} The court found that Wife earned approximately the same amount each year: $29,574 in 2018, $30,553 in 2019, and $29,188 in 2020. Most of Wife's expenses were connected to her equestrian pursuits. For many years, she has been riding and showing in competitive equestrian events, often traveling with members of her family. Throughout the year, she would travel to horse shows in various states and routinely to Florida during the winter months. It was while in Florida that Wife discovered polo and quickly developed an interest in the sport. She began training with polo clubs in Florida and Pennsylvania, and she believes that she could be successful as a professional polo player, a potentially lucrative endeavor.

{¶ 40} The trial court found that the parties had enjoyed a very good standard of living during their marriage and had little debt. But the demands of Husband's medical career and Wife's equestrian ambitions kept them both away from home, and the time apart

took its toll on their marriage. Husband wanted Wife home more, and when nothing changed, he asked her to move out. She moved back with her parents. Husband did not support her financially afterwards.

{¶ 41} In its spousal support decision, the trial court stated that it had considered all the statutory factors, mentioning specifically that it had considered the parties' earnings in order to achieve equitable parity. The court weighed more heavily the age of the parties, their nine-year marriage, the great disparity of income, the property division, the tax consequences, the great disparity in earning potential, and their very good standard of living during the marriage. The court said that it did not consider Wife's equestrian expenses, because she had always relied on her parents to help with those expenses. After considering all these factors, the court ordered Husband to pay Wife $12,000 per month ($144,000 per year), beginning October 1, 2022, for three years plus 30 percent of any bonus he receives in 2022, 2023, 2024, and 2025.

{¶ 42} Husband contends that spousal support should not have been awarded at all. He says that Wife simply does not need spousal support nor do the statutory factors support an award. She has been able to maintain (or even exceed) her standard of living with the support of her family. His money, says Husband, will not enable her to place herself in a better position to earn more. He also points out that he only began earning a significant income in July 2019. Even if a support award was appropriate, Husband argues that the amount and duration that the trial court ordered was excessive. He suggests that the court miscalculated Wife's monthly expenses and should not have awarded her any of his bonus pay.

{¶ 43} We note first that the standard for determining spousal support is not need; the standard is "appropriate and reasonable." *Kedanis v. Kedanis*, 12th Dist. Butler No. CA2012-01-015, 2012-Ohio-3533, ¶ 18. "Need is but one factor among many that the trial

court may consider in awarding reasonable and appropriate spousal support." *Id.* at ¶ 19 (holding that receiving more support than what is needed for appellee's monthly budget did not render the support award an abuse of discretion). Also, living expenses are a discretionary consideration that "*may* be considered if the court finds such expenses to be relevant." (Emphasis sic.) *Derrit v. Derrit*, 163 Ohio App.3d 52, 2005-Ohio-4777, ¶ 32 (11th Dist.) (noting that living expenses of a party are not one of the specifically enumerated statutory factors). As for bonuses, a court may allocate a portion of an obligor's bonus income as part of the total spousal support award. *Ghanayem v. Ghanayem*, 12th Dist. Warren Nos. CA2018-12-138 and CA2018-12-142, 2020-Ohio-423, ¶ 22 (stating that a bonus "can appropriately be considered in the calculation of his support obligations"). By statute, "[i]n determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income." R.C. 3105.18(C)(2). This includes bonus pay. Accordingly, "a spousal support award that is a percentage of a payor spouse's income is not a per se abuse of the trial court's discretion." *Ornelas v. Ornelas*, 12th Dist. Warren No. CA2011-08-094, 2012-Ohio-4106, ¶ 44.

{¶ 44} Husband contends that the trial court miscalculated Wife's monthly expenses. The court found that her monthly expenses were $9,550, based on Wife's financial affidavit. Husband proposes that the court failed to deduct Wife's equestrian expenses, which she testified were $7,500 per month. Therefore, after deducting those expenses, Wife's monthly expenses are only $2,050. However, the trial court expressly stated that it did not consider Wife's equestrian expenses in its spousal support determination, undercutting Husband's argument that the court made a miscalculation.

{¶ 45} Husband also contends that the court should not have awarded a portion of his bonuses to Wife. He says 30 percent of his bonus pay for four years is excessive and

fails to consider the tax consequences. Husband alleges that the result is that Wife will receive a higher net amount of his bonuses than he will. In support, he cites an IRS tax table that is in the record, but Husband does not explain the calculation that would support his allegation. We decline to figure out the calculation for him. Regardless, the trial court expressly stated that it considered the tax consequences to the parties. Husband further contends here that the court should not have divided his $83,400 bonus for 2021. That bonus pay, says Husband, was related to a new contract that he signed in August 2021, after the date that they valued their property. That property division and valuation was not part of the spousal-support award. In any event, Husband fails to convince us that the court abused its discretion by dividing the bonus equally.

{¶ 46} We conclude that the trial court did not abuse its discretion in its award of spousal support. The trial court considered the statutory factors as well as other relevant factors before fashioning its award. While the award may appear generous, we are not permitted by the legal standards of appellate review simply to substitute our judgment for that of the trial court.

{¶ 47} Husband's first assignment of error is overruled.

### III. Conclusion

{¶ 48} We have overruled Husband's assignments of error and overruled Wife's cross-assignment of error. The trial court's judgment is affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.